UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

TOWAKI KOMATSU,

               Plaintiff,

-vs-

The City of New York, New York City Police
Department ("NYPD") Deputy Inspector Howard,
Officer ("P.O.") Rafael Beato (Shield No. 13326),
Lieutenant Ralph Nieves, Detective Gerola (Shield
No. 6577), John Doe 1, Harold Miller,
Pinny Ringel, in their individual capacities,

               Defendants.
------------------------------------------------------- X

18 Civ. **18CV3698**

**COMPLAINT**

**JURY DEMAND**

    Plaintiff Towaki Komatsu (hereinafter referred to in the first-person as "I", "me", and "my"), proceeding pro se in this action, does hereby state and allege:

**PRELIMINARY STATEMENT**

1. This is a civil rights action brought to vindicate my rights under the First and Fourteenth Amendments of the Constitution of the United States, through the Civil Rights Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with additional claims pursuant to New York State's Open Meetings Law that concern illegal viewpoint discrimination, voter fraud, and voter suppression.

2. My rights were violated on 4/27/17 when the following occurred on that date along 38th Street adjacent to the Queens Vocational and Technical High School that is located at 37-02 47th Ave. in Long Island City, New York:

    a. NYPD Deputy Inspector Howard Redmond illegally prevented me from being able to

attend the public town hall meeting that New York City Mayor Bill de Blasio (hereinafter referred to as "the Mayor") held on 4/27/17 inside of the school just mentioned. Before Mr. Redmond did so, the following occurred:

   i. I RSVP-ed in advance to attend that meeting by contacting Nic Gulotta on 4/24/17 to do so. Mr. Gulotta works for the Mayor's Community Affairs Unit (hereinafter referred to as "CAU").

   ii. I arrived to that school before 6 pm on that date and was among the first 20 members of the general public who waited in a line outside of and adjacent to it in order to be granted admittance into it to attend that meeting.

   iii. While waiting in line to attend that meeting, I was given a ticket between 5:45 pm and 6:20 pm by a female member of the Mayor's staff to do so. However, when I then proceeded to try to follow other members of the public who had been ahead of me in line for that meeting into that school through a set of that school's doors marked "Exit 13" on their exterior that were used to grant members of the general public access into that school in order to attend that meeting, I was immediately, arbitrarily, and capriciously told by Harold Miller and Pinny Ringel of the Mayor's CAU that I instead needed to move away from that entrance and line of people by waiting in an area of the sidewalk that was located next to that line of people. In doing so, Mr. Miller and Mr. Ringel harassed and caused humiliation to me while also flagrantly violating my First Amendment right to lawfully assemble, Fourteenth Amendment rights to equal protection and due process, New York State's Open Meetings Law, and the federal criminal statutes of 245(b)(5), and 18

U.S.C. § 245(b)(5), and 18 U.S.C. § 241. Upon being directed by Mr. Miller and Mr. Ringel to wait away from the entrance to that school, I immediately knew that I was being illegally segregated and discriminated against and told Mr. Miller that I was being illegally discriminated against.

iv. Three other members of the public were also similarly directed to wait in the area where I was directed by Mr. Miller and Mr. Ringel to wait, as other members of the public who had waited behind me in the line of people discussed above were granted admittance into that school and entered it to attend that meeting. While waiting in that area away from that line of people, I talked with several unknown members of the NYPD to try to persuade them to intervene on my behalf in order to enforce applicable law by arranging for me to be granted entrance into that school without delay to attend that meeting. However, the fact that none of those members of the NYPD intervened in this way makes them liable for having failed to intervene.

v. When I re-entered the line of people discussed above to again try to exercise my First Amendment right to enter to that school to attend that public meeting that was subject to New York State's Open Meetings Law, I encountered both Mr. Miller and Mr. Redmond in front of me near the entrance to that school by the doors marked "Exit 13". During a brief conversation that I had with Miller at that time, Mr. Miller expressed to me that I still needed to wait away from that entrance to the school. As a result, I reluctantly complied and walked away.

vi. One of the people who had been directed to wait in the area of a sidewalk

away from that school's entrance and the line of people entering that school recorded several video recordings on 4/27/17 between the time that he was directed to wait in that area and was able to enter that school on that date. What is shown in those video recordings substantiate my claims in this action. In particular, one of those video recordings confirms that Mr. Ringel illegally told that witness that he had to wait on the sidewalk before a decision would be made about whether to grant him and I entrance into that meeting after that witness and I had already been in the line of people to attend that meeting. One of the other video recordings that witness recorded on 4/27/17 recorded me having a conversation with Mr. Miller near "Exit 13" to that school while Mr. Redmond stood to my right and observed that interaction.

vii. All of the people that I had waited with on the sidewalk next to that school on 4/27/17 were allowed to enter that school on 4/27/17 to observe the public town hall meeting that the Mayor held on that date.

b. Between 7 pm and 8 pm on 4/27/17, Mr. Redmond illegally assaulted, harassed, and humiliated me without any legal justification by willfully making physical contact with my body that I immediately considered to be offensive, as Mr. Redmond told me that he would not allow me into that school on 4/27/17.

c. While illegally preventing me from entering the school discussed above on 4/27/17, Mr. Redmond lied to me by telling him that he had observed me harassing the New York City Human Resources Administration (hereinafter referred to as "HRA") Commissioner Steven Banks at a meeting and that was Mr. Redmond's reason for preventing me from entering the school discussed above on 4/27/17.

d. Since I had never harassed Mr. Banks at a meeting before I met Mr. Redmond and therefore instantly knew that Mr. Redmond was lying with respect to the point just discussed, I immediately and lawfully challenged Mr. Redmond to substantiate his claim that he had observed me harassing Mr. Banks at a meeting. After I challenged Mr. Redmond in this way by ordering Mr. Redmond to substantiate his claim by telling me when he made that observation, where he made that observation, and how I had harassed Mr. Banks at a meeting, Mr. Redmond didn't comply in any way.

e. NYPD Officer Rafael Beato (Shield No. 13326) of the NYPD's 108th precinct illegally assaulted me on 4/27/17 without any legal justification by shoving me three times in my chest while I lawfully stood on a nearly empty sidewalk located on 38th Street, next to the school discussed above, and at a point on that sidewalk that was between the doors to that school marked #Exit 15" and #Exit 13" and roughly 45 feet away from the doors marked "Exit 15".

f. While Mr. Beato shoved me on 4/27/17, an unknown male member of the NYPD in uniform hereinafter referred to as "John Doe 1" stood next to him and illegally refused to intervene to stop it and arrest Mr. Beato. By shoving me 3 times on 4/27/17, Mr. Beato illegally and forcibly caused me to be displayed by roughly 15 feet from where I stood immediately before he began his illegal assault against me by shoving me.

g. Shortly before Mr. Beato shoved me, he, John Doe 1, and NYPD Lieutenant Nieves were all in an area in and outside of that school by the doors marked "Exit 15" located in the rear of that school. While they were all in that area and right before Mr. Beato and John Doe 1 approached me on the sidewalk, I observed Mr. Nieves

appearing to talk with them that in hindsight was likely for the purpose of Mr. Nieves ordering Mr. Beato and John Doe 1 to make me move from where I was lawfully standing on a public sidewalk that was nearly empty at that time.

    h. At about the time that Mr. Beato illegally shoved me for the third time on 4/27/17, Mr. Nieves, John Doe 1, and NYPD Detective Gerola (Shield No. 6577) stood near him. However, all of them illegally refused to intervene to end Mr. Beato's illegal assault against me and arrest Mr. Beato. Instead, the four of them worked in concert to position their bodies in such a way that prevented me from being able to see the Mayor as he left that meeting. This fact illegally deprived me from being able to have a line of sight to the Mayor as he left that school in order to know when I could lawfully call out to the Mayor as he left it in accordance with my First Amendment right from a sufficiently safe distance away for the purpose of **a)** alerting him to the illegal acts that Mr. Redmond, Mr. Beato, Mr. Nieves, Mr. Gerola, Mr. Miller, and Mr. Ringel had committed against me on 4/27/17 in relation to the public town hall meeting he held on that date and **b)** asking the Mayor what corrective actions he was willing to take in response to this.

3. By reason of defendants' actions on 4/27/17 that I just discussed, I was illegally deprived of my constitutional rights on that date.

4. Plaintiff seeks to be awarded compensatory damages, punitive damages, all costs related to this action and attorneys' fees, and pre-judgment and post-judgment interest.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331. This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1988 and the First and Fourteenth

Amendments to the Constitution of the United States.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b) because I am a resident of Bronx County in the State of New York.

7. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

8. Consistent with the requirements of New York General Municipal Law § 50-e, I filed a timely Notice of Claim with the New York City Comptroller within 90 days of the accrual of my claims under New York law. This Court therefore has supplemental jurisdiction over my claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

9. My claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

10. I am, and was at all times relevant to this action, a resident of Bronx County in the State of New York. I am also a U.S. Navy veteran, who swore to defend the U.S. Constitution against all of its enemies indefinitely and without exceptions. I have honored that oath and continue to do so.

11. NYPD Deputy Inspector Howard Redmond, Lieutenant Nieves, and Detective Gerola are and were at all times relevant herein, officers, employees and agents of the NYPD that have been and continue to be members of the Mayor's NYPD security detail that Mr. Redmond heads.

12. NYPD Officer Rafael Beato (Shield No. 13326) and John Doe 1 are and were at all times relevant herein, officers, employees and agents of the NYPD.

13. Harold Miller and Pinny Ringel are and were at all times relevant herein members of the Mayor's CAU and employed by the City of New York.

14. The individual defendants are being sued herein in their individual and official capacities.

15. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD and City of New York, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD and Mayor at all times relevant herein. While doing so, the defendants in this action who are members of the NYPD did so with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

16. The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in egregious disregard of plaintiff's rights.

17. At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## STATEMENT OF FACTS

18. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

## FIRST CLAIM
## DEPRIVATION OF RIGHTS
## UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. §1983
### (Against the individual defendants)

19. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

20. Mr. Redmond's decision to illegally prevent me from being able to attend the public town hall meeting that the Mayor held on 4/27/17 was likely motivated by observations that Mr. Redmond may have made on 3/15/17 while I engaged in protected First Amendment and

whistleblower activity against HRA's Commissioner Steven Banks during the public town hall meeting that the Mayor held on that date that Mr. Redmond attended and was recorded on video.

21. To recap, the following is true about the events that took place on 4/27/17, as they relate to this action:

    a. Defendant Redmond, Miller, and Ringel illegally prevented me from attending the public town hall meeting that the Mayor held on 4/27/17 and did so **a)** in retaliation for protected First Amendment and whistleblower activity that I had been engaged in prior to that date to the detriment of HRA's Commissioner Steven Banks or **b)** in concert with Mr. Redmond while I informed both Mr. Miller and Mr. Ringel that they were illegally discriminating against me. In doing so, these defendants illegally subjected me to viewpoint discrimination and a prior restraint against protected First Amendment political speech and whistleblowing that would be adverse to the interests of HRA's Commissioner and the Mayor.

    b. Defendant Redmond fabricated a fraudulent excuse to explain his decision to prevent me from attending the public town hall meeting that the Mayor held on 4/27/17. When fabricating that fraudulent excuse, Mr. Redmond did so in furtherance of an illegal viewpoint discrimination scheme he perpetrated against me to prevent me from attending that public town hall meeting on 4/27/17 for which a public record was created because the Mayor's office arranged for it to be recorded on video that was made publicly available. This fact confirms that Mr. Redmond committed a felony by violating New York State Penal Code § 175.25, as he also violated the federal criminal statutes of 18 U.S.C. 245(b)(5) and 18 U.S.C. 241 by illegally preventing me

from attending the public town hall meeting that the Mayor held on 4/27/17 in which I intended to engage in protected First Amendment expression and whistleblowing activity to the detriment of HRA's Commissioner and the Mayor while that meeting was recorded on video in such a way that my whistleblowing activity would shared with others by being recorded on video.

c. By their conduct and actions against me on 4/27/17, Mr. Redmond, Mr. Miller, and Mr. Ringel acted under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused irreparable harm and damage in violation of my constitutional rights as guaranteed through 42 U.S.C. § 1983 and the United States Constitution, including its First and Fourteenth Amendments. As a result of their conduct and actions against me on 4/27/17, I was deprived of liberty, suffered emotional distress, humiliation, and otherwise damaged and injured.

d. Defendant Beato, Nieves, Gerola, and John Doe 1 illegally interfered with my rights pursuant to the First Amendment and Fourteenth Amendment to lawfully stand on a public sidewalk adjacent to the school that hosted the public town hall meeting that the Mayor held on 4/27/17, have a direct line of sight to the Mayor as he left that school, and tell and otherwise ask him the following as a whistleblower from 45 feet away as he left that school on that date:

   i. Mr. Redmond illegally prevented me from having attended that public meeting, lied about his reason for doing so, and assaulted me while doing so.

   ii. Mr. Beato illegally assaulted me on that date as I lawfully stood on that sidewalk.

iii. John Doe 1, Mr. Nieves, and Mr. Gerola witnessed Mr. Beato having assaulted me and illegally refused to intervene on my behalf to end that assault and arrest Mr. Beato for having committed it.

iv. HRA Commissioner Steven Mr. Banks lied to my face yet again on 4/11/17 in Staten Island about why HRA's business partners haven't provided me with legal assistance after I told the Mayor on 3/15/17 during the public town hall meeting that he held that Mr. Banks had similarly and previously lied to me about that same subject.

v. Mr. Redmond's actions against me on 4/27/17 at the site of that public town hall meeting had illegally prevented me from using that public meeting to engage in networking with others who attended it to seek services and resources to improve my chances of getting a job that would be commensurate with my experience and compensation history after I had recently lost my job.

vi. Mr. Redmond's actions against me on 4/27/17 at the site of that public town hall meeting had had also illegally prevented me from using that public meeting to try to get legal representation for an elderly woman named Brenda Kaminsky who has resided in a building located in Rego Park in Queens where I previously resided and on whose behalf I talked to the Mayor about on 3/27/18 in front of journalists named Gloria Pazmino and Jillian Jorgensen while inside of the Governor's Room located inside of New York City Hall while that meeting was recorded on video and in a selfless effort to try to get her legal representation that I previously tried to get for her on 4/27/17 by **a)** trying to attend the public town hall meeting that the Mayor held on that date

and **b)** contacting Kevin Wisniewski on 4/18/17 while he was the Deputy Chief of Staff for New York State Assemblyman Andrew Hevesi.

vii. Ask the Mayor what corrective action he was willing to take against the individuals who are defendants in this action for how they treated me on 4/27/17.

viii. Ask the Mayor what corrective action he was willing to take against HRA Commissioner Steven Banks for having repeatedly lied to me.

e. By their conduct and actions against me on 4/27/17, Defendants Beato, John Doe 1, Nieves, and Gerola acted under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused irreparable harm and damage in violation of my constitutional rights as guaranteed through 42 U.S.C. § 1983 and the United States Constitution, including its First and Fourteenth Amendments. As a result of their conduct and actions against me on 4/27/17, I was deprived of liberty, assaulted, suffered emotional distress, humiliation, and otherwise damaged and injured.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. §1983**
**<u>VIOLATIONS OF THE FOURTEENTH AMENDMENT</u>**
*(Against the City of New York)*

22. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

23. The individual defendants' acts and omissions described above by the individual defendants in this action who were members of the NYPD on 4/27/17 were carried out pursuant to the City's overlapping customs and practices which were in existence on 4/27/17 and were

engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agency, the NYPD.

24. The acts complained of by the individual defendants in this action who were members of the NYPD on 4/27/17 were carried out by them in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

25. The aforementioned customs and practices of the City and the NYPD include, but are not limited to illegally retaliating against people who lawfully exercise their First Amendment rights in ways that members of the NYPD do not like.

26. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in below:

    **Journalists and Demonstrators**

    a. *Sherrard v. City of New York*, No. 15-CV-7318 (MB) (S.D.N.Y.)

        This is an active federal civil rights lawsuit against Defendant Redmond that stems from Mr. Redmond's involvement on 9/17/12 in events that caused the plaintiff (Kalan Sherrard) in that lawsuit to have been illegally stopped, seized, and jailed in lower Manhattan for roughly 19 hours without any legal basis and occurred while the plaintiff in that lawsuit was lawfully riding a bicycle while dressed in a unique manner. According to Document number 110 in that lawsuit's docket sheet, Defendant Redmond will stand trial in that lawsuit on 6/12/18.

    b. *Faraone v. City of New York*, No. 13-CV-9074 (DLC) (S.D.N.Y.)

        This was a federal civil rights lawsuit against Defendant Redmond that stemmed from Mr. Redmond's involvement in handcuffing the plaintiff (Christopher Faraone) in

that lawsuit on 9/17/12 while Mr. Faraone was a journalist covering a protest in lower Manhattan on the same date that Mr. Redmond was involved in events that occurred that caused the lawsuit just discussed above to have been filed against him by Kalan Sherrard. According to Document number 85 in the docket sheet for the lawsuit that Mr. Faraone filed against Mr. Redmond, an order was issued in that lawsuit on 6/14/16 that indicated that a settlement had been reached in that lawsuit.

c. July 2016: Nathan Tempey

A news article written by a journalist named Emma Whitford that was entitled "De Blasio Kept Press in the Dark About Trip Abroad Until Hours Before Departure" was published on 7/6/17 on the Internet at the following address by a publication named Gothamist that is no longer in business:

http://gothamist.com/2017/07/06/de_blasio_europe_surprise.php

That news article reported about the fact that Mr. Redmond flagrantly and illegally interfered with the First Amendment rights of a journalist named Nathan Tempey inside of Newark Airport in July of 2016 while Mr. Tempey tried to photograph the Mayor from a sufficient distance away in accordance with the principle of "freedom of the press." That news article also reported about the fact that Mr. Redmond lied to Mr. Tempey while meeting him then by telling Mr. Tempey that Mr. Redmond was a Port Authority police officer and that the New York City Civilian Complaint Review Board later wrongly condoned Mr. Redmond's lie to Mr. Tempey. On 7/17/16, Mr. Tempey also engaged in detailed discussions with journalists named Matthew Chayes of Newsday and John Dawsey through the social media platform named Twitter about his interactions with Mr. Redmond in Newark Airport during that month.

    d. Ejecting demonstrators from the Mayor's public town hall meeting on 12/20/17

After a group of utterly fantastic people began lawfully exercising their First Amendment rights during the public town hall meeting that the Mayor held in Brooklyn on 12/20/17 that I attended and while the Mayor was in the same room as us, Defendant Redmond, Defendant Ringel, and Defendant Miller were involved in causing those I just identified as being fantastic people to be ejected from forcibly ejected from that meeting in flagrant violation of my First Amendment right to continue hearing and enjoying what they had to say in opposition to the Mayor during that public town hall meeting while I lawfully made a video recording of them.

    e. 6/21/17: NYPD's illegal seizure of literature from people seeking to attend the Mayor's public town hall meeting

A news article written by a journalist named Richard Khavkine that was entitled "NYPD lawyer quells free speech dispute" was published on 7/20/17 on the Internet at the following address by a publication named "The Spirit":

    http://www.westsidespirit.com/local-news/20170720/nypd-lawyer-quells-free-speech-dispute/1

That news article reported about the fact that members of the NYPD illegally seized literature from people who sought to attend the public town hall meeting that the Mayor held on 6/21/17 in Chinatown in Manhattan, as those people moved through a line to enter the building that hosted that meeting.

27. All of the foregoing acts by defendants deprived me of federally protected rights that include, but are not limited to the constitutional rights enumerated in paragraphs 21 thru 23.

28. Defendant City knew or should have known that the acts alleged herein would deprive me of my rights in violation of the First and Fourteenth Amendments of the United States

Constitution.

29. Defendant City is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

30. Defendant City is similarly and directly liable and responsible for the acts of Defendants Harold Miller and Pinny Ringel because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and to require compliance with the Constitution and laws of the United States.

31. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City, including the Mayor and NYPD Commissioner James O'Neill, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers and members of the Mayor's administration that includes his CAU with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

32. The aforementioned City policies, practices and/or customs of failing to supervise, train, instruct and discipline both police officers and members of the Mayor's administration and

encouraging their misconduct are evidenced by the misconduct by members of the NYPD and Mayor's CAU detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to illegally subject me to viewpoint discrimination, segregation, unreasonable and wholly unprovoked physical force, and otherwise violate my First Amendment and Fourteenth Amendment rights on 4/27/17 at the site of the public town hall meeting that the Mayor held on that date and then concoct a fraudulent and fabricated false story to cover up their blatant violations of my constitutional rights on that date. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in and report other defendants' violations of my rights.

33. My injuries were a direct and proximate result of the defendant City and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers and members of the Mayor's administration.

34. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by members of the NYPD and Mayor's CAU and were directly responsible for the violations of my constitutional rights on 4/27/17 at the site of the public town hall meeting that the Mayor held on that date.

## DEMAND FOR A JURY TRIAL

35. I demand a trial by jury in this action on each and every one of my damage claims.

## PRAYER FOR RELIEF

36. WHEREFORE, I respectfully demand judgment against the defendants individually and jointly and pray for relief as follows:

    a. That I be compensated for violations of my constitutional rights, pain, suffering,

mental anguish, and humiliation; and

b. That I be awarded punitive damages against the individual defendants; and

c. That I be compensated for attorneys' fees and the costs and disbursements of this action; and

d. For such other further and different relief as to the Court may seem just and proper.

Dated:    New York, New York
          April 26, 2018

Respectfully submitted,

_____
Towaki Komatsu
*Plaintiff, Pro Se*
802 Fairmount Pl., Apt. 4B
Bronx, NY 10460
(718) 450-6951
Towaki_Komatsu@yahoo.com

## PLAINTIFF'S CERTIFICATION AND WARNINGS:

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

Dated:  New York, New York
        April 26, 2018

_____
Towaki Komatsu
*Plaintiff, Pro Se*
802 Fairmount Pl., Apt. 4B
Bronx, NY 10460
(718) 450-6951
Towaki_Komatsu@yahoo.com