USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: .
DATE FILED: 3⧸ 5/24/18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------- X

TOWAKI KOMATSU,                                    <u>18-cv-3698</u>

              Plaintiff,             <u>**AMENDED COMPLAINT**</u>

-vs-                                               <u>**JURY DEMAND**</u>

The City of New York, New York City Police
Department ("NYPD") Deputy Inspector Howard,
Officer ("P.O.") Rafael Beato (Shield No. 13326),
Lieutenant Ralph Nieves, Detective Gerola (Shield
No. 6577), John Doe 1, Harold Miller,
Pinny Ringel, Rachel Atcheson, Detective
Berkowitz (Shield No. 7141), Bronx Supreme Court
Officer Captain Anthony Manzi, Bronx Supreme
Court Officer Sergeant Brunner (Shield No. 478)
Bronx Supreme Court Officer Dominguez (Shield
No. 508), New York State Office of Court
Administration, in their individual and official
capacities,

              Defendants.
-------------------------------------------------- X

      Plaintiff Towaki Komatsu (hereinafter referred to in the first-person as "I", "me", and

"my"), proceeding pro se in this action, does hereby state and allege:

<u>**PRELIMINARY STATEMENT**</u>

1. This is a civil rights action brought to vindicate my rights under the First, Fourth, and

    Fourteenth Amendments of the Constitution of the United States, through the Civil Rights

    Act of 1871, *as amended*, codified as 42 U.S.C. § 1983, along with additional claims

    pursuant to New York State's Open Meetings Law that concern illegal viewpoint

    discrimination, voter fraud, and voter suppression.

2. My claims in this action are thoroughly supported by findings that United States District Court Judge Naomi Reice Buchwald issued on 5/23/18 in the case of *Knight First Amendment Institute at Columbia University et al v. Trump et al*, No. 17-CV-5205 (S.D.N.Y. May 23, 2018) that was a lawsuit about viewpoint discrimination and violations of the First Amendment by the temporary and insufficiently maligned President of the United States.

3. This action is also being commenced to expose censorship by alleged journalists that enabled voter fraud and voter suppression to occur and determine the outcome of the 2017 New York City government elections.

4. My rights were violated on 4/27/17 when the following occurred on that date along 38th Street adjacent to the Queens Vocational and Technical High School that is located at 37-02 47th Ave. in Long Island City, New York:

   a. NYPD Deputy Inspector Howard Redmond illegally prevented me from being able to attend the public town hall meeting that New York City Mayor Bill de Blasio (hereinafter referred to as "the Mayor") held on 4/27/17 inside of the school just mentioned. Before Mr. Redmond did so, the following occurred:

      i. I RSVP-ed in advance to attend that meeting by contacting Nic Gulotta on 4/24/17 to do so. Mr. Gulotta works for the Mayor's Community Affairs Unit (hereinafter referred to as "CAU").

      ii. I arrived to that school before 6 pm on that date and was among the first 20 members of the general public who waited in a line outside of and adjacent to it in order to be granted admittance into it to attend that meeting.

      iii. While waiting in line to attend that meeting, I was given a ticket between 5:45 pm and 6:20 pm by a female member of the Mayor's staff to do so. However,

when I then proceeded to try to follow other members of the public who had

been ahead of me in line for that meeting into that school through a set of that

school's doors marked "Exit 13" on their exterior that were used to grant

members of the general public access into that school in order to attend that

meeting, I was immediately, arbitrarily, and capriciously told by Harold

Miller and Pinny Ringel of the Mayor's CAU that I instead needed to move

away from that entrance and line of people by waiting in an area of the

sidewalk that was located next to that line of people. In doing so, Mr. Miller

and Mr. Ringel harassed and caused humiliation to me while also flagrantly

violating my First Amendment right to lawfully assemble, Fourteenth

Amendment rights to equal protection and due process, New York State's

Open Meetings Law, and the federal criminal statutes of 245(b)(5), and 18

U.S.C. § 245(b)(5), and 18 U.S.C. § 241. Upon being directed by Mr. Miller

and Mr. Ringel to wait away from the entrance to that school, I immediately

knew that I was being illegally segregated and discriminated against and told

Mr. Miller that I was being illegally discriminated against.

iv.  Three other members of the public were also similarly directed to wait in the

area where I was directed by Mr. Miller and Mr. Ringel to wait, as other

members of the public who had waited behind me in the line of people

discussed above were granted admittance into that school and entered it to

attend that meeting. While waiting in that area away from that line of people, I

talked with several unknown members of the NYPD to try to persuade them to

intervene on my behalf in order to enforce applicable law by arranging for me

to be granted entrance into that school without delay to attend that meeting. However, the fact that none of those members of the NYPD intervened in this way makes them liable for having failed to intervene.

v.  When I re-entered the line of people discussed above to again try to exercise my First Amendment right to enter to that school to attend that public meeting that was subject to New York State's Open Meetings Law, I encountered both Mr. Miller and Mr. Redmond in front of me near the entrance to that school by the doors marked "Exit 13". During a brief conversation that I had with Miller at that time, Mr. Miller expressed to me that I still needed to wait away from that entrance to the school. As a result, I reluctantly complied and walked away.

vi.  One of the people who had been directed to wait in the area of a sidewalk away from that school's entrance and the line of people entering that school recorded several video recordings on 4/27/17 between the time that he was directed to wait in that area and was able to enter that school on that date. What is shown in those video recordings substantiate my claims in this action. In particular, one of those video recordings confirms that Mr. Ringel illegally told that witness that he had to wait on the sidewalk before a decision would be made about whether to grant him and I entrance into that meeting after that witness and I had already been in the line of people to attend that meeting. One of the other video recordings that witness recorded on 4/27/17 recorded me having a conversation with Mr. Miller near "Exit 13" to that school while Mr. Redmond stood to my right and observed that interaction.

vii. All of the people that I had waited with on the sidewalk next to that school on
4/27/17 were allowed to enter that school on 4/27/17 to observe the public
town hall meeting that the Mayor held on that date.

b. Between 7 pm and 8 pm on 4/27/17, Mr. Redmond illegally assaulted, harassed, and
humiliated me without any legal justification by willfully making physical contact
with my body that I immediately considered to be offensive, as Mr. Redmond told me
that he would not allow me into that school on 4/27/17.

c. While illegally preventing me from entering the school discussed above on 4/27/17,
Mr. Redmond lied to me by telling him that he had observed me harassing the New
York City Human Resources Administration (hereinafter referred to as "HRA")
Commissioner Steven Banks at a meeting and that was Mr. Redmond's reason for
preventing me from entering the school discussed above on 4/27/17.

d. Since I had never harassed Mr. Banks at a meeting before I met Mr. Redmond and
therefore instantly knew that Mr. Redmond was lying with respect to the point just
discussed, I immediately and lawfully challenged Mr. Redmond to substantiate his
claim that he had observed me harassing Mr. Banks at a meeting. After I challenged
Mr. Redmond in this way by ordering Mr. Redmond to substantiate his claim by
telling me when he made that observation, where he made that observation, and how I
had harassed Mr. Banks at a meeting, Mr. Redmond didn't comply in any way.

e. NYPD Officer Rafael Beato (Shield No. 13326) of the NYPD's 108th precinct
illegally assaulted me on 4/27/17 without any legal justification by shoving me three
times in my chest while I lawfully stood on a nearly empty sidewalk located on 38th
Street, next to the school discussed above, and at a point on that sidewalk that was

between the doors to that school marked "Exit 15" and "Exit 13" and roughly 45 feet

away from the doors marked "Exit 15".

f.  While Mr. Beato shoved me on 4/27/17, an unknown male member of the NYPD in

uniform hereinafter referred to as "John Doe 1" stood next to him and illegally

refused to intervene to stop it and arrest Mr. Beato. By shoving me 3 times on

4/27/17, Mr. Beato illegally and forcibly caused me to be displayed by roughly 15

feet from where I stood immediately before he began his illegal assault against me by

shoving me.

g.  Shortly before Mr. Beato shoved me, he, John Doe 1, and NYPD Lieutenant Nieves

were all in an area in and outside of that school by the doors marked "Exit 15"

located in the rear of that school. While they were all in that area and right before Mr.

Beato and John Doe 1 approached me on the sidewalk, I observed Mr. Nieves

appearing to talk with them that in hindsight was likely for the purpose of Mr. Nieves

ordering Mr. Beato and John Doe 1 to make me move from where I was lawfully

standing on a public sidewalk that was nearly empty at that time.

h.  At about the time that Mr. Beato illegally shoved me for the third time on 4/27/17,

Mr. Nieves, John Doe 1, and NYPD Detective Gerola (Shield No. 6577) stood near

him. However, all of them illegally refused to intervene to end Mr. Beato's illegal

assault against me and arrest Mr. Beato. Instead, the four of them worked in concert

to position their bodies in such a way that prevented me from being able to see the

Mayor as he left that meeting. This fact illegally deprived me from being able to have

a line of sight to the Mayor as he left that school in order to know when I could

lawfully call out to the Mayor as he left it in accordance with my First Amendment

right from a sufficiently safe distance away for the purpose of **a)** alerting him to the illegal acts that Mr. Redmond, Mr. Beato, Mr. Nieves, Mr. Gerola, Mr. Miller, and Mr. Ringel had committed against me on 4/27/17 in relation to the public town hall meeting he held on that date and **b)** asking the Mayor what corrective actions he was willing to take in response to this.

5. By reason of defendants' actions on 4/27/17 that I just discussed, I was illegally deprived of my constitutional rights on that date.

6. My rights were violated on 5/23/17 when the following occurred inside of the Bronx Supreme Court that is located at 851 Grand Concourse in the Bronx:

   a. The following defendants conspired and colluded to engage in illegal acts separately and jointly coordinated and did, in fact, engage in such illegal acts in flagrant and willful violation of my constitutional First Amendment and Fourteenth Amendment rights that caused me irreparable harm as a result of those acts having illegally prevented from being able to attend a public resource fair meeting that the Mayor held on that date and inside of that courthouse while also subjecting another member of the public to comparable illegal acts on that date, in that courthouse, and in relation to that same public resource fair meeting:

      i. Rachel Atcheson of the Mayor's CAU.

      ii. Lieutenant Ralph Nieves, Detective Berkowitz (Shield No. 7141), and Detective Gerola (Shield No. 6577) of the NYPD.

      iii. Bronx Supreme Court Officers Captain Anthony Manzi, Sergeant Brunner (Shield No. 478), and Officer Dominguez (Shield No. 508) that, upon information and belief, the New York State Office of Court Administration

had a duty to properly supervise on 5/23/17 and failed to do so.

b. Rachel Atcheson illegally prevented me from entering the Veterans Memorial Hall

chamber within the Bronx Supreme Court on 5/23/17 in which the Mayor held his

public resource fair meeting that I had RSVP-ed to attend prior to that meeting. Ms.

Atcheson illegally prevented me from doing so by illegally directing me to move

away from the entrance to the Veterans Memorial Hall chamber in that courthouse as

I approached it to exercise my rights under the First Amendment and Fourteenth

Amendment of the United States Constitution as well as New York State's Open

Meetings Law to lawfully attend that meeting, engage in protected whistleblowing

activity in it, and attempt to use that meeting to try to get assistance with obtaining

employment and legal assistance from New York City government agencies. Ms.

Atcheson is shown in video footage that was recorded on 5/23/17 by a security

camera controlled by the New York State Office of Court Administration making

hand gestures at 9:31 am with her right hand while standing next to me inside of the

Bronx Supreme Court to express her desire for me to follow her instructions and

move away from the entrance to the Veterans Memorial Hall chamber in that

courthouse.

c. Upon information and belief, Mr. Nieves coordinated efforts with Mr. Gerola, Mr.

Berkowitz, Mr. Brunner, Mr. Dominguez, and Mr. Manzi to illegally prevent me from

entering the Veterans Memorial Hall chamber on 5/23/17 that I just discussed to

attend the public resource fair meeting that the Mayor held inside of it. Mr. Nieves is

shown in video footage that was recorded on 5/23/17 by a security camera controlled

by the New York State Office of Court Administration talking to me at 9:34 am near

the entrance to the Veterans Memorial Hall chamber in that courthouse while he was aware that I was illegally not being allowed to enter it that was occurring in spite of the fact that other members of the public had been admitted into that public meeting and I was conducting myself lawfully. The security camera just discussed also recorded Mr. Nieves observing a conversation at 9:37 am that I was having on 5/23/17 in that courthouse with Michael Gartland while sitting next to him and while he was employed by the New York Post as a journalist. While I talked with Mr. Gartland on that date and in that courthouse, I clearly told him that members of the NYPD and a member of the Mayor's office were again subjecting me to illegal viewpoint discrimination in that courthouse. Instead of that information having been reported by the New York Post, censorship kept it from appearing to the detriment of the general public and those who voted and may have otherwise voted in the 2017 New York City government elections. Additionally, the security camera just discussed also recorded conversations that Mr. Nieves, Mr. Brunner, and Mr. Dominguez had on 5/23/17 at roughly 9:40 am in front of Room 105 in that courthouse ostensibly for the purpose of coordinating their efforts to illegally prevent me from attending the public resource fair meeting that the Mayor held in that courthouse on that date. Furthermore, a video recording that I was legally recording with a cell phone at 9:40 am on 5/23/17 in front of Room 105 in that courthouse serves to further confirm that Mr. Nieves, Mr. Gerola, Mr. Berkowitz, Mr. Brunner, and Mr. Dominguez were having a conversation with one another at that time in front of Room 105 in that courthouse ostensibly for the purpose of coordinating their efforts to illegally prevent me from attending the public resource fair meeting that the

Mayor held in that courthouse on that date.

    d. Mr. Manzi is shown at 9:47 am on 5/23/17 in video footage that was recorded by the security camera controlled by the New York State Office of Court Administration that was recording from a location near Room 105 in the Bronx Supreme Court, as Mr. Manzi used his left hand to make a hand gesture to illegally direct me away from the entrance to the Veterans Memorial Hall chamber within that courthouse to illegally prevent me from attending the public resource fair meeting that the Mayor was holding inside of it. While doing so, both Mr. Brunner and Mr. Dominguez stood to Mr. Manzi's left and illegally failed to intervene on my behalf to direct Mr. Manzi to back down and stop interfering with my constitutional rights as well as my rights pursuant to New York State's Open Meetings Law to attend that public meeting. Additionally, at 9:49 am on 5/23/17, the same security camera I just discussed recorded Mr. Manzi using his right hand to illegally seize a bag of mine that contained a copy of a sealed lawsuit I commenced against the New York City Human Resources Administration in flagrant violation of my Fourth Amendment rights and an order that New York State Supreme Court Judge Barry Ostrager issued on 1/17/17 that had the effect of prohibiting Mr. Manzi from having any access to that lawsuit.

7. By reason of defendants' actions on 5/23/17 that I just discussed, I was illegally deprived of my constitutional rights on that date.

8. On 12/26/17, members of the NYPD illegally stopped, harassed, assaulted, physically injured, and illegally arrested me after I repeatedly testified and otherwise made valid complaints against members of the NYPD. Prior to that 12/26/17 incident, I had most recently testified against the NYPD on 12/14/17 during a New York City Council public

hearing that was held by its Public Safety Committee. Due to my having been illegally arrested on 12/26/17, I was illegally detained by the NYPD for roughly 1 day and have since been forced to wasteful and pointless attend court hearings in relation to the entirely frivolous criminal prosecution of me that was commenced in retaliation for my having lawfully exercised my legal self-defense rights in response to having been illegally assaulted by members of the NYPD on 12/26/17. The entirely frivolous criminal prosecution of me that is assigned to the Bronx Criminal Court has been assigned the case number of 2017BX048917 and is continuing in spite of the fact that I received a letter from the NYPD's Internal Affairs Bureau dated 3/26/18 that confirmed it substantiated complaints I made against members of the NYPD who caused me to be illegally arrested. The relevance of the discussion in this paragraph to this action at this time is that it warrants equitable tolling to be applied to my claims in this action that concern 5/23/17 because the NYPD's illegal acts against me on 12/26/17 cost me time that could have otherwise been spent including claims associated with 5/23/17 in this action within the applicable one-year deadline of commencing legal action in regards to them.

9.  By reason of defendants' actions on 5/23/17 that I just discussed, I was illegally deprived of my constitutional rights on that date.

10. Plaintiff seeks to be awarded compensatory damages, punitive damages, all costs related to this action and attorneys' fees, and pre-judgment and post-judgment interest.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§1331. This action is brought pursuant to 42 U.S.C. §§1983, 1985, 1988 and the First, Fourth, and Fourteenth Amendments to the Constitution of the United States.

12. Venue is proper pursuant to 28 U.S.C. § 1391(b) because I am a resident of Bronx County in the State of New York.

13. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. §1988.

14. Consistent with the requirements of New York General Municipal Law § 50-e, I filed a timely Notice of Claim with the New York City Comptroller within 90 days of the accrual of my claims under New York law. This Court therefore has supplemental jurisdiction over my claims under New York law because they are so related to the within federal claims that they form part of the same case or controversy pursuant to 28 U.S.C. § 1367(a).

15. My claims have not been adjusted by the New York City Comptroller's Office.

## PARTIES

16. I am, and was at all times relevant to this action, a resident of Bronx County in the State of New York. I am also a U.S. Navy veteran, who swore to defend the U.S. Constitution against all of its enemies indefinitely and without exceptions. I have honored that oath and continue to do so.

17. NYPD Deputy Inspector Howard Redmond, Lieutenant Nieves, Detective Gerola, and Detective Berkowitz are and were at all times relevant herein, officers, employees and agents of the NYPD that have been and continue to be members of the Mayor's NYPD security detail that Mr. Redmond heads.

18. NYPD Officer Rafael Beato (Shield No. 13326) and John Doe 1 are and were at all times relevant herein, officers, employees and agents of the NYPD.

19. Harold Miller, Pinny Ringel, and Rachel Atcheson are and were at all times relevant herein members of the Mayor's CAU and employed by the City of New York.

20. Anthony Manzi, Mr. Brunner (Shield No. 478), and Mr. Dominguez (Shield No. 508) are and

were at all times relevant herein subject to supervision by the New York State Office of Court Administration and employed by the State of New York.

21. The individual defendants are being sued herein in their individual and official capacities.

22. At all times relevant herein, the individual defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of the NYPD, City of New York, and State of New York, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD and Mayor at all times relevant herein. While doing so, the defendants in this action who are members of the NYPD did so with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD. While doing so, the defendants in this action who are subject to supervision by the New York State Office of Court Administration and are court officers did so with the power and authority vested in them as such officers and employees of the State of New York and incidental to the lawful pursuit of their duties as such officers and employees.

23. The individual defendants' acts hereafter complained of were carried out intentionally, recklessly, with malice, and in egregious disregard of plaintiff's rights.

24. At all relevant times, the individual defendants were engaged in joint ventures, assisting each other in performing the various actions described herein and lending their physical presence and support and the authority of their offices to one another.

## STATEMENT OF FACTS

25. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

**FIRST CLAIM**
**DEPRIVATION OF RIGHTS**
**UNDER THE UNITED STATES CONSTITUTION THROUGH 42 U.S.C. §1983**
**(Against the individual defendants)**

26. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

27. Mr. Redmond's decision to illegally prevent me from being able to attend the public town hall meeting that the Mayor held on 4/27/17 was likely motivated by observations that Mr. Redmond may have made on 3/15/17 while I engaged in protected First Amendment and whistleblower activity against HRA's Commissioner Steven Banks during the public town hall meeting that the Mayor held on that date that Mr. Redmond attended and was recorded on video.

28. To recap, the following is true about the events that took place on 4/27/17, as they relate to this action:

   a. Defendant Redmond, Miller, and Ringel illegally prevented me from attending the public town hall meeting that the Mayor held on 4/27/17 and did so **a)** in retaliation for protected First Amendment and whistleblower activity that I had been engaged in prior to that date to the detriment of HRA's Commissioner Steven Banks or **b)** in concert with Mr. Redmond while I informed both Mr. Miller and Mr. Ringel that they were illegally discriminating against me. In doing so, these defendants illegally subjected me to viewpoint discrimination and a prior restraint against protected First Amendment political speech and whistleblowing that would be adverse to the interests of HRA's Commissioner and the Mayor.

   b. Defendant Redmond fabricated a fraudulent excuse to explain his decision to prevent me from attending the public town hall meeting that the Mayor held on 4/27/17.

When fabricating that fraudulent excuse, Mr. Redmond did so in furtherance of an illegal viewpoint discrimination scheme he perpetrated against me to prevent me from attending that public town hall meeting on 4/27/17 for which a public record was created because the Mayor's office arranged for it to be recorded on video that was made publicly available. This fact confirms that Mr. Redmond committed a felony by violating New York State Penal Code § 175.25, as he also violated the federal criminal statutes of 18 U.S.C. 245(b)(5) and 18 U.S.C. 241 by illegally preventing me from attending the public town hall meeting that the Mayor held on 4/27/17 in which I intended to engage in protected First Amendment expression and whistleblowing activity to the detriment of HRA's Commissioner and the Mayor while that meeting was recorded on video in such a way that my whistleblowing activity would shared with others by being recorded on video.

c. By their conduct and actions against me on 4/27/17, Mr. Redmond, Mr. Miller, and Mr. Ringel acted under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused irreparable harm and damage in violation of my constitutional rights as guaranteed through 42 U.S.C. § 1983 and the United States Constitution, including its First and Fourteenth Amendments. As a result of their conduct and actions against me on 4/27/17, I was deprived of liberty, suffered emotional distress, humiliation, and otherwise damaged and injured.

d. Defendant Beato, Nieves, Gerola, and John Doe 1 illegally interfered with my rights pursuant to the First Amendment and Fourteenth Amendment to lawfully stand on a public sidewalk adjacent to the school that hosted the public town hall meeting that

the Mayor held on 4/27/17, have a direct line of sight to the Mayor as he left that

school, and tell and otherwise ask him the following as a whistleblower from 45 feet

away as he left that school on that date:

i.   Mr. Redmond illegally prevented me from having attended that public

meeting, lied about his reason for doing so, and assaulted me while doing so.

ii.   Mr. Beato illegally assaulted me on that date as I lawfully stood on that

sidewalk.

iii.   John Doe 1, Mr. Nieves, and Mr. Gerola witnessed Mr. Beato having

assaulted me and illegally refused to intervene on my behalf to end that

assault and arrest Mr. Beato for having committed it.

iv.   HRA Commissioner Steven Mr. Banks lied to my face yet again on 4/11/17 in

Staten Island about why HRA's business partners haven't provided me with

legal assistance after I told the Mayor on 3/15/17 during the public town hall

meeting that he held that Mr. Banks had similarly and previously lied to me

about that same subject.

v.   Mr. Redmond's actions against me on 4/27/17 at the site of that public town

hall meeting had illegally prevented me from using that public meeting to

engage in networking with others who attended it to seek services and

resources to improve my chances of getting a job that would be commensurate

with my experience and compensation history after I had recently lost my job.

vi.   Mr. Redmond's actions against me on 4/27/17 at the site of that public town

hall meeting had had also illegally prevented me from using that public

meeting to try to get legal representation for an elderly woman named Brenda

Kaminsky who has resided in a building located in Rego Park in Queens where I previously resided and on whose behalf I talked to the Mayor about on 3/27/18 in front of journalists named Gloria Pazmino and Jillian Jorgensen while inside of the Governor's Room located inside of New York City Hall while that meeting was recorded on video and in a selfless effort to try to get her legal representation that I previously tried to get for her on 4/27/17 by **a)** trying to attend the public town hall meeting that the Mayor held on that date and **b)** contacting Kevin Wisniewski on 4/18/17 while he was the Deputy Chief of Staff for New York State Assemblyman Andrew Hevesi.

    vii. Ask the Mayor what corrective action he was willing to take against the individuals who are defendants in this action for how they treated me on 4/27/17.

    viii. Ask the Mayor what corrective action he was willing to take against HRA Commissioner Steven Banks for having repeatedly lied to me.

e. By their conduct and actions against me on 4/27/17, Defendants Beato, John Doe 1, Nieves, and Gerola acted under color of law and without lawful justification, intentionally, and/or with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused irreparable harm and damage in violation of my constitutional rights as guaranteed through 42 U.S.C. § 1983 and the United States Constitution, including its First and Fourteenth Amendments. As a result of their conduct and actions against me on 4/27/17, I was deprived of liberty, assaulted, suffered emotional distress, humiliation, and otherwise damaged and injured.

29. The preceding discussion in the numbered paragraph 26 is equally true about how my rights were violated on 5/23/17 inside of the Bronx Supreme Court and is incorporated by reference for brevity's sake to assert my claims in regards to 5/23/17.

30. The illegal actions committed against me on 5/23/17 inside of the Bronx Supreme Court that I discussed in this action were in furtherance of a fraudulent scheme to willfully and flagrantly engage in voter fraud and voter suppression by continuing to subject me to viewpoint discrimination at public meetings that the Mayor held and used as campaign events while he ran for re-election in 2017 as New York City Mayor. In regards to this point, video footage that was recorded on 5/23/17 inside of the Bronx Supreme Court by the security camera located by Room 105 and controlled by the New York State Office of Court Administration recorded Mr. Redmond walking near me at 10:01 am while holding what appears to be a walkie-talkie or similar communications device in his left hand and as he walked with two men who appear to be court officers. Additionally, the reason why I brought a copy of my lawsuit against the New York City Human Resources Administration was to try to engage in protected whistleblower activity while trying to discuss it with the commissioner of that that agency while in the presence and earshot of members of the general public and journalists.

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. §1983**
**VIOLATIONS OF THE FOURTEENTH AMENDMENT**
*(Against the City of New York and the New York State Office of Court Administration)*

31. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

32. The individual defendants' acts and omissions described above by the individual defendants in this action who were members of the NYPD on 4/27/17 and 5/23/17 were carried out

pursuant to the City's overlapping customs and practices which were in existence on those dates and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of the City and its agency, the NYPD.

33. The acts complained of by the individual defendants in this action who were members of the NYPD on 4/27/17 and 5/23/17 were carried out by them in their capacities as police officials pursuant to customs, policies, usages, practices, procedures and rules of the City and the NYPD, all under the supervision of ranking officers of the NYPD.

34. The aforementioned customs and practices of the City and the NYPD include, but are not limited to illegally retaliating against people who lawfully exercise their First Amendment rights in ways that members of the NYPD do not like.

35. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in below:

**Journalists and Demonstrators**

a. *Sherrard v. City of New York*, No. 15-CV-7318 (MB) (S.D.N.Y.)

This is an active federal civil rights lawsuit against Defendant Redmond that stems from Mr. Redmond's involvement on 9/17/12 in events that caused the plaintiff (Kalan Sherrard) in that lawsuit to have been illegally stopped, seized, and jailed in lower Manhattan for roughly 19 hours without any legal basis and occurred while the plaintiff in that lawsuit was lawfully riding a bicycle while dressed in a unique manner. According to Document number 110 in that lawsuit's docket sheet, Defendant Redmond will stand trial in that lawsuit on 6/12/18.

b. *Faraone v. City of New York*, No. 13-CV-9074 (DLC) (S.D.N.Y.)

This was a federal civil rights lawsuit against Defendant Redmond that stemmed from

Mr. Redmond's involvement in handcuffing the plaintiff (Christopher Faraone) in

that lawsuit on 9/17/12 while Mr. Faraone was a journalist covering a protest in lower

Manhattan on the same date that Mr. Redmond was involved in events that occurred

that caused the lawsuit just discussed above to have been filed against him by Kalan

Sherrard. According to Document number 85 in the docket sheet for the lawsuit that

Mr. Faraone filed against Mr. Redmond, an order was issued in that lawsuit on

6/14/16 that indicated that a settlement had been reached in that lawsuit.

c.   July 2016: Nathan Tempey

A news article written by a journalist named Emma Whitford that was entitled "De

Blasio Kept Press in the Dark About Trip Abroad Until Hours Before Departure" was

published on 7/6/17 on the Internet at the following address by a publication named

Gothamist that is no longer in business:

  http://gothamist.com/2017/07/06/de_blasio_europe_surprise.php

That news article reported about the fact that Mr. Redmond flagrantly and illegally

interfered with the First Amendment rights of a journalist named Nathan Tempey

inside of Newark Airport in July of 2016 while Mr. Tempey tried to photograph the

Mayor from a sufficient distance away in accordance with the principle of "freedom

of the press." That news article also reported about the fact that Mr. Redmond lied to

Mr. Tempey while meeting him then by telling Mr. Tempey that Mr. Redmond was a

Port Authority police officer and that the New York City Civilian Complaint Review

Board later wrongly condoned Mr. Redmond's lie to Mr. Tempey. On 7/17/16, Mr.

Tempey also engaged in detailed discussions with journalists named Matthew Chayes

of Newsday and John Dawsey through the social media platform named Twitter about

his interactions with Mr. Redmond in Newark Airport during that month.

    d.  Ejecting demonstrators from the Mayor's public town hall meeting on 12/20/17

After a group of utterly fantastic people began lawfully exercising their First

Amendment rights during the public town hall meeting that the Mayor held in

Brooklyn on 12/20/17 that I attended and while the Mayor was in the same room as

us, Defendant Redmond, Defendant Ringel, and Defendant Miller were involved in

causing those I just identified as being fantastic people to be ejected from forcibly

ejected from that meeting in flagrant violation of my First Amendment right to

continue hearing and enjoying what they had to say in opposition to the Mayor during

that public town hall meeting while I lawfully made a video recording of them.

    e.  6/21/17: NYPD's illegal seizure of literature from people seeking to attend the

Mayor's public town hall meeting

A news article written by a journalist named Richard Khavkine that was entitled

"NYPD lawyer quells free speech dispute" was published on 7/20/17 on the Internet

at the following address by a publication named "The Spirit":

    http://www.westsidespirit.com/local-news/20170720/nypd-lawyer-quells-free-
    speech-dispute/1

That news article reported about the fact that members of the NYPD illegally seized

literature from people who sought to attend the public town hall meeting that the

Mayor held on 6/21/17 in Chinatown in Manhattan, as those people moved through a

line to enter the building that hosted that meeting.

36. All of the foregoing acts by defendants deprived me of federally protected rights that include,

but are not limited to the constitutional rights enumerated between paragraphs 25 and 35.

37. Defendant City of New York (hereinafter referred to as "Defendant City") knew or should

have known that the acts alleged herein would deprive me of my rights in violation of the First and Fourteenth Amendments of the United States Constitution.

38. Defendant City is directly liable and responsible for the acts of the individual police defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and NYPD, and to require compliance with the Constitution and laws of the United States.

39. Defendant City is similarly and directly liable and responsible for the acts of Defendants Harold Miller, Pinny Ringel, and Rachel Atcheson because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the City and to require compliance with the Constitution and laws of the United States.

40. Despite knowledge of such unlawful de facto policies, practices and/or customs, these supervisory and policy-making officers and officials of the NYPD and the City, including the Mayor and NYPD Commissioner James O'Neill, have not taken steps to terminate these policies, practices and/or customs, do not discipline individuals who engage in such polices, practices and/or customs, or otherwise properly train police officers and members of the Mayor's administration that includes his CAU with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanction and ratify these policies, practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

41. The aforementioned City policies, practices and/or customs of failing to supervise, train,

instruct and discipline both police officers and members of the Mayor's administration and encouraging their misconduct are evidenced by the misconduct by members of the NYPD and Mayor's CAU detailed herein. Specifically, pursuant to the aforementioned City policies, practices and/or customs, the individual defendants felt empowered to illegally subject me to viewpoint discrimination, segregation, unreasonable and wholly unprovoked physical force, and otherwise violate my First Amendment and Fourteenth Amendment rights on 4/27/17 and 5/23/17 at the site of the public town hall and public resource fair meetings that the Mayor held on those dates and then concoct a fraudulent and fabricated false story to cover up their blatant violations of my constitutional rights on that date. Pursuant to the aforementioned City policies, practices and/or customs, defendants failed to intervene in and report other defendants' violations of my rights.

42. My injuries were a direct and proximate result of the defendant City and the NYPD's wrongful de facto policies and/or well-settled and widespread customs and practices and of the knowing and repeated failure of the defendant City and the NYPD to properly supervise, train and discipline their police officers and members of the Mayor's administration.

43. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by members of the NYPD and Mayor's CAU and were directly responsible for the violations of my constitutional rights on 4/27/17 and 5/23/17 at the sites of the public town hall and public resource fair meetings that the Mayor held on those dates.

44. Defendant New York State Office of Court Administration (hereinafter referred to as "Defendant OCA") knew or should have known that the acts alleged herein would deprive me of my rights in violation of the First and Fourteenth Amendments of the United States

Constitution.

45. Defendant OCA is directly liable and responsible for the acts of the individual defendants who were court officers assigned to the Bronx Supreme Court on 5/23/17 because it failed to properly supervise, train, instruct, and discipline them and because it failed to enforce the laws, rules, and regulations of the State of New York and to require compliance with the Constitution and laws of the United States.

46. Despite knowledge of such unlawful de facto policies, practices and/or customs by court officers and others in New York State courthouses, supervisory and policy-making officials of OCA failed to **a)** take steps to prevent these policies, practices and/or customs from being followed on 5/23/17 by court officers assigned to the Bronx Supreme Court and **b)** otherwise properly train such court officers with regard to the constitutional and statutory limits on the exercise of their authority. Instead, it appears that supervisory and policy-making officials of OCA have sanctioned and ratified the policies, practices and/or customs by court officers assigned to New York State courthouses to show deference to and cooperate with members of the NYPD operating inside of New York State courthouses, even when such members of the NYPD are engaged in illegal acts inside of such courthouses. Things appear this way due to the deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City and State of New York.

47. The irreparable harm and other injuries I suffered on 5/23/17 inside of the Bronx Supreme Court and as a result thereafter were a direct and proximate result of defendant OCA's wrongful de facto policies and/or well-settled and widespread customs and practices and of the failure to properly supervise, train and discipline court officers assigned to New York

State courthouses.

48. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by members of the NYPD and Mayor's CAU and were directly responsible for the violations of my constitutional rights on 4/27/17 and 5/23/17 at the sites of the public town hall and public resource fair meetings that the Mayor held on those dates.

**THIRD CLAIM FOR RELIEF**
**42 U.S.C. §1983**
**VIOLATIONS OF THE FOURTH AMENDMENT**
***(Against Defendant Anthony Manzi and the New York State Office of Court Administration)***

49. I incorporate by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

50. My Manzi illegally seized a bag from me at 9:49 am on 5/23/17 inside of the Bronx Supreme Court while it is entirely reasonable to believe that he knew that he had no legal authority to do so and while he was violating my First Amendment and Fourteenth Amendment rights by illegally preventing me from attending a public meeting that the Mayor was holding in that courthouse. Mr. Manzi's actions against me on 5/23/17 illegally deprived me of personal property in flagrant violation of my Fourth Amendment constitutional rights.

**DEMAND FOR A JURY TRIAL**

51. I demand a trial by jury in this action on each and every one of my damage claims.

## **PRAYER FOR RELIEF**

52. WHEREFORE, I respectfully demand judgment against the defendants individually and

jointly and pray for relief as follows:

    a. That I be compensated for violations of my constitutional rights, pain, suffering,

       mental anguish, and humiliation; and

    b. That I be awarded punitive damages against the individual defendants; and

    c. That this court issue an order voiding the results of the 2017 New York City

       government elections for the jobs of New York City Mayor and New York City

       Council primarily because it is reasonable to believe that results of those elections

       were materially tainted by voter fraud and voter suppression that occurred.

    d. That I be compensated for attorneys' fees and the costs and disbursements of this

       action; and

    e. For such other further and different relief as to the Court may seem just and proper.

Dated:     New York, New York
           May 24, 2018

Respectfully submitted,

Towaki Komatsu
*Plaintiff, Pro Se*
802 Fairmount Pl., Apt. 4B
Bronx, NY 10460
(718) 450-6951
Towaki_Komatsu@yahoo.com

## PLAINTIFF'S CERTIFICATION AND WARNINGS:

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a non-frivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.


Dated:        New York, New York
              May 24, 2018

                                        Towaki Komatsu
                                        *Plaintiff, Pro Se*
                                        802 Fairmount Pl., Apt. 4B
                                        Bronx, NY 10460
                                        (718) 450-6951
                                        Towaki_Komatsu@yahoo.com