Judge. Lorna Schofield
Thurgood Marshall U.S. Courthouse
40 Foley Street
New York, New York 10007

RECEIVED
SDNY PRO SE OFFICE
2019 MAR -5 PM 3: 19

Re:   *Komatsu v. City of New York et al.,*
      <u>Case No: 18 Civ. 3698 (LGS)</u>

Tuesday, March 5, 2019

Judge Schofield,

I'm submitting this letter to order you to promptly grant me authorization pursuant to FRCP

Rules 15, 18, and 60 to **a)** add Jeffrey Mosczyc of the New York City Human Resources

Administration ("HRA"), New York State Senator Jessica Ramos, and the following judges

assigned to the New York State Unified Court System as defendants in this action and **b)** file a

supplemental pleading that identifies my claims against them in this action instead of having me

file a proposed further amended complaint that would also list my existing claims and defendants

in this action:

   a.   Nancy Bannon, George Silver, Alexander Tisch, Lawrence Marks, and Janet DiFiore.

Contrary to this Court's deceit, claims that I seek to assert in this action against those I just

identified directly relate back to, clarify, and amplify my existing claims in it and are permissible

pursuant to the Ex Parte Young legal doctrine.

The following is a pertinent excerpt from <u>*Berrios v. State Univ. of New York at Stony Brook,*</u> 518

F. Supp. 2d 409 (E.D.N.Y. 2007) that confirms that I have a valid claim to assert against Mr.

Mosczyc in this action that stems from him having illegally and flagrantly violated my First

Amendment and Fourteenth Amendment legal right to present oral arguments as scheduled on

4/12/17 in my state court lawsuit against HRA that I have previously apprised this Court about in this action and is assigned to the New York State Supreme Court in Manhattan and assigned the index number of 100054/2017:

> "The First Amendment protects the right of access to the courts. _Lewis v. Casey_, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996); _Monsky v. Moraghan_, 127 F.3d 243, 246 (2d Cir.1997); _Patriots Way, LLC v. Marconi_, 2007 WL 988712 *4 (D.Conn.2007). The right of access is "bound up" with the First Amendment right to petition the government. See _Colondres v. Scoppetta_, 290 F.Supp.2d 376, 381 (E.D.N.Y.2003). When the government obstructs an individual's effort to seek judicial redress, this right is violated. _Whalen v. County of Fulton_, 126 F.3d 400, 406 (2d Cir.1997). The claim of obstruction must be supported by a showing that state action hindered the plaintiffs effort to "pursue a nonfrivolous legal remedy." _Id._ (citation omitted). Additionally, plaintiff must show injury, i.e., that defendant took action that was actually responsible for prejudicing an existing action or interfering with the right of access. _Id._
>
> The right of access to the courts and to petition the government includes the right to be free from retaliation for the exercise of such right. _Colondres_, 290 F.Supp.2d at 382; see _Patriots Way_, 2007 WL 988712, at *6. A plaintiff alleging retaliation must allege that: "(i) he has an interest protected by the First Amendment; (ii) the defendant's actions were motivated by or substantially caused by the plaintiffs exercise of that right; and (iii) the defendant's action effectively chilled the exercise of the plaintiffs First Amendment rights." _Connell v. Signoracci_, 153 F.3d 74, 79 (2d Cir.1998); _see also Ford v. Reynolds_, 326 F.Supp.2d 392, 403 (E.D.N.Y.2004).
>
> The right of access is subject to the same type of analysis as the right to free speech. _White Plains Towing Corp. v. Patterson_, 991 F.2d 1049, 1059 (2d Cir. 1993). Thus, a plaintiff asserting violation of the right to access must show that the access implicates a matter of public concern. _Id._; _Bates v. Bigger_, 192 F.Supp.2d 160, 171 (S.D.N.Y.2002)."

On 8/15/18, I submitted a voluminous legal filing in this action in which I clearly discussed the fact that both HRA's Jeffrey Mosczyc and New York State Judge Bannon illegally and flagrantly violated my First Amendment and Fourteenth Amendment right to have a court hearing held as scheduled on 4/12/17 in my state court lawsuit against HRA that Judge Bannon had scheduled to be held on that date on 1/26/17. I previously discussed this information in this action on page 8 and within numbered paragraph 33 that appears within an emergency order to show cause application that I filed as an exhibit in this action on 8/15/18. Upon information and belief, that

discussion can be found within the **Exhibit A** that comprised that legal filing. The emergency

order to show cause application to which I just referred was addressed to my state court lawsuit

against HRA and filed in this action for the purpose of exercising my legal right to engage in

parallel litigation that this Court illegally and fraudulently thereafter refused to permit me to do

by engaging in affirmative misconduct to my detriment. My claims in this action are largely

about Defendant City of New York's personnel having engaged in illegal acts that caused me to

be illegally discriminated against at and in regards to public meetings that were public forums

that New York City Mayor Bill de Blasio ("the Mayor") and members of the New York City

Council held with HRA Commissioner Steven Banks and other government officials. Such

discrimination against me at such public forums began on 4/27/17 and caused me to be illegally

prevented from attending such public forums from within the room in which the Mayor

conducted them while he did so and prevented me from being able to petition the Mayor, HRA's

Commissioner, and others in those rooms during those public forums for redress of grievances

while my lawsuit against HRA that I commenced on 1/17/17 has remained active.


Contrary to this Court's deceit, illegal acts and omissions that Mr. Mosczyc and Ms. Bannon

committed against me in April of 2017 that caused me to have been illegally denied my legal

right to have a court hearing held as scheduled on 4/12/17 for the purpose of presenting oral

arguments in my state court lawsuit against HRA have been and remain inextricably intertwined

with and a transactional source of causation that gave rise to my claims in this action. As a

reminder, after Mr. Mosczyc used a fraudulent pretext to request an adjournment of the

scheduled 4/12/17 court hearing in my state court lawsuit against HRA from Ms. Bannon, she

illegally granted it. Her granting of that adjournment application was illegal primarily because I

hadn't been notified of that application before she granted it that illegally denied me my fundamental due process right to file opposition papers in response to that application before it could be legally granted. The 4/12/17 court hearing had been scheduled to occur just 1 day after I engaged in related litigation against HRA by participating in an administrative fair hearing by telephone that was conducted by the New York State Office of Temporary and Disability Assistance ("OTDA"). An attorney for HRA named Marin Gerber and a few OTDA personnel participated in that fair hearing that was recorded on audio. Since my 4/12/17 court hearing in my state court lawsuit against HRA had been scheduled to occur on that date by Ms. Bannon on 1/26/17 and Mr. Mosczyc illegally and fraudulently concealed his adjournment application to her from me before she illegally granted it on 4/11/17, it stands to reason that Mr. Mosczyc's actual motivation to have sought that adjournment was to illegally deprive me of my First Amendment and Fourteenth Amendment rights to attend and participate as scheduled on 4/12/17 in that court hearing that would have been a limited public forum in which I indisputably would have been permitted to speak while engaging in protected whistleblower activity against HRA while my remarks would have been transcribed. For these reasons, I'm ordering this Court to diligently, methodically, and promptly re-read every single word, sentence, paragraph, and exhibit that comprise the legal filing that I submitted in this action on 8/15/18 for the purpose of granting me reconsideration on the merits for authorizing me to file a further amended complaint in this action. Since this Court has an atrocious track record for paying attention to details, I hereby request an immediate one or more conferences in which we may jointly read aloud the entirety of my 8/15/18 legal filing in this action as our remarks are transcribed for the benefit of the U.S. Court of Appeals for the Second Circuit and members of the general public who may be

interested in learning how terrible this Court's reading comprehension, attention to detail, and biases are.

Prior to attending the public town hall meeting that the Mayor held on 4/27/17, I met New York City Councilman Jumanne Williams on 4/18/17 during a public town hall meeting that he held with other government officials in the Flatbush section of Brooklyn. During that meeting, he made remarks in which he urged the audience to hold government officials accountable. I then testified to him the next day during a public hearing that the New York City Council's Committee on Housing and Buildings conducted inside of the main chamber located in New York City Hall that was recorded on video as a result of arrangements that the New York City Council made. During that public hearing, much of testimony was against how the New York City Department of Housing, Preservation and Development ("HPD") and the New York City Department of Buildings ("DOB") had been performing. I thereafter continued to hold government officials accountable as I testified against HRA on 4/20/17 during a public hearing that the New York City Council's Committee on General Welfare held that also was recorded on video as a result of arrangements that the New York City Council made. I previously apprised this Court of the sum and substance of my testimony during that public hearing, as I then testified about a matter that has been among my primary claims against HRA in my state court lawsuit. The following is the plain text that appears in numbered paragraph 159 that is shown on pages 220 and 221 within the supporting affidavit for the emergency order to show cause application addressed to my state court lawsuit against HRA that I filed in this action on 8/15/18 with that affidavit as exhibits:

"By illegally preventing me from attending the public meeting that the Mayor held on 4/27/17, Mr. Redmond preventing me from using that public forum to engage in protected whistleblowing about the fact that HRA flagrantly violated all of the laws and regulations just discussed that pertain to the adjournment application Mr. Mosczyc faxed to Judge Bannon's chambers on 4/5/17. After that application was granted, I had a telephone conversation with an attorney named Jennifer Levy while she worked for the New York City Public Advocate's Office about the fact that HRA had illegally applied for and obtained an adjournment of the 4/12/17 oral arguments hearing in the lower court proceeding. During my conversation with her, she told me that HRA often waits until the last minute to file such adjournment applications."

The preceding excerpt from that affidavit confirms that I continued to try to hold government officials accountable by apprising Ms. Levy about the fact that Mr. Mosczyc had illegally deprived me of my legal right to present oral arguments as scheduled on 4/12/17 in my state court lawsuit against HRA. The first exhibit that appears within the annexed **Exhibit A** is an e-mail message that I received from Ms. Levy on 4/25/17 at 8:50 am that confirms that I sought assistance from her office in regards to one of my primary claims against HRA in my state court lawsuit against it that was also a claim that I asserted against HRA in litigation that pursued against it that was conducted by OTDA as an administrative appellate forum that previously issued a decision in my favor about that matter on 9/15/16 that it thereafter refused to fully enforce and was partly responsible for thereafter prompting me to file my state court lawsuit against HRA. The e-mail message that I received from Ms. Levy on 4/25/17 at 8:50 am indisputably relates to, clarifies, and amplifies my existing claims in this action by providing information to this Court from which a reasonable inference may be drawn with respect to both **a)** its proximity in time to the public town hall meeting that I was illegally prevented from attending on 4/27/17 and **b)** its substance that concerned my litigation against HRA to allow this Court to reasonably conclude that my litigation and whistleblowing against HRA was likely the primary reason why I was illegally prevented from attending the public town hall meeting and

public resource fair meeting that the Mayor held on 4/27/17 and 5/23/17.

The discussion that follows reiterates points that I previously made to this Court through the legal filing that I submitted to it on 2/19/19 and concern the following:

a. Remarks that I made during a town hall meeting on 6/15/17 that CBS New York conducted with other news organizations and recorded on video while I was then in the presence of a journalist named Erin Durkin to a journalist named Marcia Kramer of CBS New York. Back then, I clearly informed both Ms. Kramer and Ms. Durkin that I had been illegally prevented from attending public town hall and public resource fair meetings that the Mayor held on and after 4/27/17.

b. Inquiries that Ms. Durkin made via e-mail on 6/28/17 to Eric Phillips in his official capacity as the Mayor's spokesman and New York State Senator Jessica Ramos while she then worked for the Mayor's office to find out **a)** whether it was true that I had been illegally prevented from attending public town hall and public resource fair meetings that the Mayor held on and after 4/27/17 and **b)** how that could be justified if it was true.

The screenshot that follows shows the content of an e-mail message that a journalist named Erin Durkin sent to Eric Phillips on 6/28/17 at 1:53 pm that was clearly about me and that I received on 2/15/19 from the Mayor's office in response to a Freedom of Information Law ("FOIL") demand that I submitted to it:

**From:** Erin Durkin ◁⬛⬛⬛⬛⬛⬛⬛ on behalf
of Erin Durkin <edurkin@nydailynews.com>
**Date:** Wednesday, June 28, 2017 at 1:53 PM
**To:** Eric Phillips <efphillips@cityhall.nyc.gov>
**Subject:** town halls

Hi Eric,
We're writing about a man named Towaki
Komatsu who says he has been barred repeatedly
from the mayor's town halls. He is filing a CCRB
complaint, though I don't believe it's been filed
yet. Shack is taking the lead on the story but asked
us to reach out. He says he was barred from the
town halls on 4/27 in Long Island City, May 23 at
the Bronx Supreme Court, and June 8 in Rego
Park, each time by members of the mayor's
security detail. The first two he was barred from
entering, the third he was sent to an overflow
room with a video feed and not allowed into the
main event after other people had left. Wondering
if this is accurate, and if so why he's been barred?

Thanks,
Erin

In that e-mail message, Ms. Durkin asked Mr. Phillips why I hadn't been permitted to attend the

public town hall and public resource fair meetings that the Mayor held on 4/27/17, 5/23/17, and

6/8/17 from within the same room that the Mayor conducted them in as he did so. Ms. Durkin's

communications with Mr. Phillips and Ms. Ramos on 6/28/17 about those matters indisputably

relate back to, clarify, and amplify my existing claims in this action. When Ms. Durkin sent that

e-mail message to Mr. Phillips on 6/28/17, she worked for the New York Daily News. What

follows is a screenshot of an e-mail message that Jaclyn Rothenberg of the Mayor's office sent to

Defendant Howard Redmond, Ms. Ramos, Eric Phillips about me and the circumstances

surrounding why I had been illegally prevented from attending public town hall and public

resource fair meetings that the Mayor held on and after 4/27/17. That e-mail message and the rest

that are shown in this letter motion that were sent on 6/28/17 are among information that I

received from the Mayor's office on 2/15/19 in response to a FOIL demand that I submitted to it.

---

**From:** Rothenberg, Jaclyn
**Sent:** Wednesday, June 28, 2017 17:18
**To:** Ramos, Jessica
**Cc:** Phillips, Eric; Redmond, Howard DI.; Hagelgans, Andrea; Casca, Michael; Arslanian, Kayla; Carrion, Marco A.; Wolfe, Emma
**Subject:** RE: town halls

Confirmed that he appeared at 4WTC on June 6 and served an Order to Show Cause. That OSC and another pending matter were submitted to the court for a decision on June 7. HRA is still waiting for the written decision.

---

The subject of the preceding e-mail message confirms that it was about my inability to attend

public town hall meetings that the Mayor held. The remarks expressed in that e-mail message

referred to the fact that I served an order to show cause application upon HRA on 6/6/17 in

HRA's offices located at 150 Greenwich Street in Manhattan that I filed in my state court lawsuit

against HRA. In this respect, Ms. Rothenberg established a clear relationship between **a)** my

inability to attend public meetings that the Mayor held on and after 4/27/17 and **b)** my state court

lawsuit against HRA. On 6/7/17, I presented oral arguments during a court hearing in that state

court lawsuit. In that e-mail message, Ms. Rothenberg didn't express that I was disruptive when I

visited HRA's offices on 6/6/17 to serve legal papers upon it.


The second exhibit that appears within the annexed **Exhibit A** is an e-mail message that Jessica

Ramos sent to Ms. Durkin about me on 6/28/17 at 5:42 pm. The following facts apply to Ms.

Ramos' remarks in that e-mail message:

a. That e-mail message was among a set of e-mail messages that Ms. Ramos sent to and

received from Ms. Durkin on 6/28/17 that concerned the circumstances surrounding

illegal acts that were perpetrated against me by defendants in this action that include the head of the Mayor's NYPD security detail (Defendant Howard Redmond) and members of the Mayor's Community Affairs Unit (Defendants Pinny Ringel, Rachel Atcheson, and Harold Miller) that caused me to have been illegally prevented from attending public meetings that the Mayor held on and after 4/27/17 from within the same room in which he did so as he did so in violation of my First Amendment and Fourteenth Amendment rights.

b.  She fraudulently concealed the fact from Ms. Durkin that an administrative law judge assigned to OTDA issued a fair hearing decision on 9/15/16 in my favor against HRA that directly concerned the government benefit that Ms. Ramos discussed in the first sentence in that e-mail message.

c.  She fraudulently concealed the fact from Ms. Durkin that I engaged in protected whistleblowing against HRA on 4/20/17 as I then read a pertinent part from that 9/15/16 OTDA fair hearing decision while I testified on 4/20/17 during a public hearing that the New York City Council's Committee on General Welfare held. She fraudulently concealed the fact that Defendant Redmond and anyone else could have thereafter reviewed my testimony from that public hearing because it was recorded on video that was and remains publicly available on the Internet.

d.  She fraudulently concealed the material and superseding fact from Ms. Durkin that HRA sent me a notice dated 1/27/17 while I resided where I still reside in which it clearly expressed that it had recently provided me the government benefit that Ms. Ramos addressed in the first sentence in that e-mail message and that HRA would continue to provide me that benefit for as long as I continued to reside there.

e.  She fraudulently concealed the material fact from Ms. Durkin that federal and New York State regulations confirm that the precise nature of my occupancy then in where I reside caused me to be legally eligible and entitled to receive the government benefit Ms. Ramos addressed in the first sentence in that e-mail message.

f.  She fraudulently concealed the material fact from Ms. Durkin that HRA had been flagrantly, fraudulently, and outrageously engaging in affirmative misconduct to my detriment by providing me the very same government benefit that Ms. Ramos addressed in the first sentence in that e-mail message at the same time that HRA was claiming in my state court lawsuit against it and in my litigation against it that was filed with OTDA that I was not legally eligible and entitled to receive that benefit from HRA.

g.  She fraudulently claimed to Ms. Durkin that **a)** the Mayor's administration had referred me to multiple legal services providers about the government benefit that she addressed in the first sentence in that e-mail message and that **b)** all of those legal services providers had denied me assistance in regards to that government benefit. Contrary to Ms. Ramos, those referrals were instead about other legal matters and they didn't make a determination as to whether to provide me assistance in regards to the government benefit that Ms. Ramos addressed in the first sentence of that e-mail message.

h.  She committed defamation against me by fraudulently claiming to Ms. Durkin that I was served an order to show cause application due to my having visited HRA's offices in June of 2017. I never was served an order to show cause application in response to my having visited HRA's offices in June of 2017.

i.  She committed defamation against me by fraudulently claiming to Ms. Durkin that I was disruptive when I visited HRA's offices in June of 2017. I wasn't and no such claim

about me having allegedly been disruptive in HRA's offices in June of 2017 was brought

to my attention until 2/15/19 when I read that e-mail message that Ms. Ramos sent to Ms.

Durkin on 6/28/17.

The following is a screenshot that reflects an e-mail message that Ms. Ramos sent to Ms. Durkin

about me on 6/28/17 at 4:54 pm:

---

On Wed, Jun 28, 2017 at 4:54 PM, Ramos, Jessica
<JRamos@cityhall.nyc.gov> wrote:

In response to your follow-ups...


Mr. Komatsu was not allowed to enter the first town hall because of
his alarming behavior. Upon speaking with security detail, he stated
that if they continued to prevent his entry, he would use physical
force to enter. He stated that he is a U.S. Navy veteran and is trained
in hand to hand combat.


Working on the Commissioner Banks bit...

---

The following facts apply to Ms. Ramos' remarks in the preceding e-mail message:

   a. She committed defamation against me by fraudulently claiming to Ms. Durkin that I

      wasn't allowed to attend the public town hall meeting that the Mayor held on 4/27/17

      because I demonstrated alarming behavior. Contrary to her claim, I didn't do so while

      trying to lawfully attend that public meeting in accordance with my legal rights pursuant

to the First Amendment, Fourteenth Amendment, and New York State's Open Meetings Law.

b. She stated that I expressed on 4/27/17 to a member of the NYPD that if I continued to be prevented from attending the public town hall meeting that the Mayor held on 4/27/17, I would use physical force to attend that public meeting. In her remarks, she fraudulently concealed the material fact that I never threatened nor otherwise suggested that I would engage in any unlawful conduct while attempting to attend that public town hall meeting. My lawful application of physical force with my feet to the ground is essential to the process of lawfully walking around to evade a member of the NYPD illegally preventing me from attending a public town hall meeting. Similarly, lawful application of physical force is necessary to pull open a door to a building hosting a public meeting that I attempt to lawfully enter.

c. She committed defamation against me by expressing to Ms. Durkin that I'm trained in hand to hand combat. The physical injuries that I sustained by having been assaulted since 2/24/19 that I have apprised this Court about and the injuries that I sustained as a result of having been assaulted on 7/2/16 where I reside that I also apprised this Court about should be sufficient for this Court to conclude that if it's true that I have been trained in hand to hand combat, I deserve a huge refund if I paid for such training. I have never claimed that I receive training in hand-to-hand combat while I served in the military. I haven't been trained in hand to hand combat in any way that is other than how many boys get into physical fights when they are kids and are forced to physically defend themselves from such assaults.

d. She fraudulently concealed the material fact that it would have been entirely irrational for

me to have expressed an unlawful threat against a member of the NYPD while he or she was on-duty primarily because it's reasonable to believe that such members of the NYPD are armed with deadly weapons, bigger than me in size, and are able to easily and quickly get support from other members of the NYPD during physical confrontation with members of the general public.

The screenshot that follows shows the content of an e-mail message that Ms. Durkin sent to Ms. Ramos on 6/28/17 at 3:27 pm that was clearly about me:

**From:** Ramos, Jessica
**Sent:** Wednesday, June 28, 2017 3:27 PM
**To:** Erin Durkin
**Cc:** Phillips, Eric
**Subject:** RE: town halls

Hi Erin,

Mr. Komatsu has never RSVP'd to a town hall. He is allowed to enter the overflow room.

Security detail first learned he's threatened Commissioner Steve Banks at the LIC town hall. When approached, Mr. Komatsu made a physical threat against a member of the security detail after one of them lightly touched his arm while speaking. This threat was officially investigated by the NYPD. He has also made several threats against other members of the security detail.

Jessica

The following facts apply to Ms. Ramos' remarks in the preceding e-mail message:

a. That e-mail message indisputably was about the circumstances surrounding why I was illegally prevented from attending the public town hall meeting that the Mayor held on 4/27/17.

b. She committed defamation against me by fraudulently claiming to Ms. Durkin that had I "never RSVP'd to a town hall" that the Mayor held.

c. She implicitly confirmed that I was being illegally subjected to a prior restraint of my First Amendment and Fourteenth Amendment right to lawfully attend and speak in public meetings that the Mayor held from within the same room in which he conducted them while he did so.

d. She committed defamation against me again by stating the following about me to Ms. Durkin:

> "Security detail first learned he's threatened Commissioner Steve Banks at the LIC town hall".

During a face-to-face conversation that I had with Mr. Banks on 12/18/18 during a public resource fair meeting that the Mayor held in the Bronx, I legally recorded my conversation with Mr. Banks on audio. That audio recording confirms that he then made remarks to me that clearly confirm that I never threatened him.

e. While expressing the following remarks to Ms. Durkin, she fraudulently concealed the material fact that Defendant Redmond illegally and deliberately initiated entirely unnecessary physical contact with me on 4/27/17 that I immediately regarded as offensive physical contact that constitutes assault:

> "When approached, Mr. Komatsu made a physical threat against a member of the security detail after one of them lightly touched his arm while speaking. This threat was officially investigated by the NYPD."

The following is a pertinent excerpt from the case of *Wright v. Musanti*, No. 14-cv-8976 (KBF) (S.D.N.Y. Jan. 20, 2017) that confirms that the physical contact that defendants Howard Redmond and Rafael Beato deliberately made and initiated with my body on 4/27/17 constituted illegal assault against me and is not protected by any type of immunity:

> "Under New York law, "`[a]n `assault' is an intentional placing of another person in fear of imminent or offensive contact.'" *Girden v. Sandals Int'l*, 262 F.3d 195, 203 (2d Cir. 2001) (quoting *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993)); *Farash v. Cont'l Airlines, Inc.*, 337 F. App'x 7, 910 (2d Cir. 2009) (same)."

   f.  While deceitfully expressing the following remarks about me to Ms. Durkin, she fraudulently concealed the material fact that though I have lawfully threatened to file valid lawsuits against members of the Mayor's NYPD security detail in response to illegal acts that its members have committed against me, I have never **a)** made an unlawful threat against any member of that group and **b)** been arrested nor prosecuted for making an unlawful threat against any member of that group:

> "He has also made several threats against other members of the security detail."

The following is a screenshot of e-mail messages that Ms. Durkin and Ms. Ramos exchanged with one another between 5:51 pm and 6:01 pm on 6/28/17 that concerned the circumstances surrounding why I was illegally prevented from attending the public town hall and public resource fair meetings that the Mayor held on 4/27/17, 5/23/17, and 6/8/17:

> On Jun 28, 2017, at 6:01 PM, Ramos, Jessica
> <JRamos@cityhall.nyc.gov> wrote:
>
> On the former, there was only disruptive behavior.
>
> Working on latter.
>
> Sent from my BlackBerry 10 smartphone.
>
> **From:** Erin Durkin
> **Sent:** Wednesday, June 28, 2017 17:51
> **To:** Ramos, Jessica
> **Cc:** Phillips, Eric
> **Subject:** Re: town halls
>
> Thanks. What was the threat against Banks?
>
> Also, on the RSVP issue - he has now provided emails he sent
> RSVP'ing for the LIC and Rego Park town hall. He also sent an
> RSVP confirmation from the Bronx Resource Fair (believe I
> said Bronx town hall before but it was actually the resource
> fair he was barred from). Want to double check on this?

The following facts apply to the remarks that Ms. Ramos and Ms. Durkin made in the e-mail

messages shown in the preceding screenshot:

a. Ms. Ramos committed defamation against me by having fraudulently claimed to Ms.

Durkin that I had been disruptive. She did so in furtherance of an illegal and fraudulent

scheme that was concocted by Defendant Howard Redmond as a fraudulent pretext

designed to prevent me from lawfully exercising my First Amendment and Fourteenth

Amendment constitutional rights to **a)** attend public town hall and public resource fair

meetings that the Mayor held on and after 4/27/17 and used as campaign events while the

Mayor ran for re-election as such and **b)** engage in protected whistleblowing against the

Mayor's administration about a broad range of different subjects that would befit the

public's interest in government accountability and transparency. Among the subjects that

I intended to engage in protected whistleblowing about during the public town hall and public resource fair meetings that the Mayor held on and after 4/27/17 was the entirety of my litigation against HRA and how that litigation had been conducted.

b. Ms. Ramos responded to a question that Ms. Durkin had asked her to find out about the nature of an alleged threat that I had made against HRA Commissioner Steven Banks by stating the following to Ms. Durkin to express that the allegation that I had threatened Mr. Banks had been fraudulently made because I never threatened him:

"On the former, there was only disruptive behavior."

As I pointed out earlier, Ms. Ramos nonetheless committed defamation against me while making the preceding remark to Ms. Durkin by fraudulently claiming that I had been disruptive.

c. Ms. Durkin confirmed that Ms. Ramos had lied to her by having claimed to her that I hadn't RSVP'd for public town hall meetings that the Mayor held.

From,

Towaki Komatsu

**Mailing Address**:

Towaki Komatsu
802 Fairmount Pl., Apt. 4B
Bronx, NY 10460

Tel: 718-450-6951

$\mathcal{A}$



**Blumberg**Excelsior® Inc. NYC 11241
www.blumberg.com   30% P.C.W.
Reorder No. 5105

From: **Jennifer Levy** jlevy@pubadvocate.nyc.gov
Subject: Fair hearing at 2:30 today
Date: April 25, 2017 at 8:50 AM
To: towaki_komatsu@yahoo.com
Cc: **Muhammad Umair Khan** khan@pubadvocate.nyc.gov



Good morning Mr. Komatsu,

I reviewed the papers that Mr. Khan sent me. It appears you have two pending Fair Hearings - one that was adjourned on 4/11/2016 and one that is scheduled for today. They both appear to be about storage. What is the prejudice to you in going forward with today's hearing? And, if there is prejudice, can you not either seek an adjournment or withdraw your hearing request without prejudice and start anew? Also, are you considering appealing the 4/19/2017 decision? You will need to do that if you want to address the May - July storage that HRA refused to pay.

--
**Jennifer Levy**
General Counsel - Litigation
Office of NYC Public Advocate Letitia James
1 Centre Street, 15th Floor North, New York, NY I 10007
Office: (212) 669-2175
Email: JLevy@pubadvocate.nyc.gov
http://www.pubadvocate.nyc.gov/
@NYCPA I @JenniferLevy17

Mr. Komatsu wanted a storage allowance, for which he was ineligible because he had an apartment. We also referred him to multiple legal services providers about this specifically and all of them denied him.

Mr. Komatsu has been served an Order to Show Cause due to his appearance at HRA in June, when he showed disruptive behavior. That OSC and another pending matter were submitted to the court for a decision on June 7. HRA is still waiting for the written decision.

Sent from my BlackBerry 10 smartphone.