USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/30/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
TOWAKI KOMATSU,                                               :
:
                              Plaintiff,     :      18 Civ. 3698 (LGS)
:
            -against-                                    :      **OPINION AND ORDER**
:
THE CITY OF NEW YORK, et al.                                  :
                              Defendants.    :
:
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       Pro se Plaintiff Towaki Komatsu brings this action against the City of New York (the "City"), the New York City Police Department ("NYPD")[1] and numerous officials in their individual and official capacities. The individual Defendants are members of the NYPD and Mayor's Community Affairs Unit, and Court Officers of the New York State courts.

       The Second Amended Complaint alleges violations of the U.S. Constitution pursuant to 42 U.S.C. § 1983 and of state law. Plaintiff requests: (1) compensation for the violation of his constitutional rights and for his pain, suffering and mental anguish, (2) punitive damages, (3) the voiding of the 2017 Mayoral election and the New York City Council election, (4) attorneys' fees and costs and (5) any further relief deemed just and proper.

       The Defendants filed motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and lack of jurisdiction based on Rule 12(b)(1). For the following reasons, the motions are granted in part and denied in part. A claim for relief is

---

[1] As a municipal agency, the NYPD is generally prohibited from being sued. *See Golian v. New York City Admin. for Children Servs*, 282 F. Supp. 3d 718, 725 (S.D.N.Y. 2017); *Ximines v. George Winggate High Sch.*, 516 F.3d 156, 160 (2d Cir. 2008) (per curiam) ("New York City departments, as distinct from the City itself, lack the capacity to be sued."). Instead, the City is generally the proper Defendant. *See id*.

sufficiently stated as to the claims that Plaintiff's First Amendment and Equal Protection rights were violated outside a City-organized Town Hall on April 27, 2017, and that the City has adopted an unconstitutional practice and policy to exclude Plaintiff from public events that the New York City Mayor attends.

I.   **BACKGROUND**

The following facts are taken from the Second Amended Complaint, documents incorporated by reference in it, and other documents Plaintiff has filed (collectively, the "Complaint").[2] While these additional documents would not be considered on a motion to dismiss if Plaintiff were represented by counsel, they are considered here because he is pro se. *See Coke v. Med., Dep't of Corr. & Cmty. Supervision*, No. 17 Civ. 0866, 2018 WL 2041388, at *1 n.2 (S.D.N.Y. Apr. 30, 2018) ("[W]hen a *pro se* plaintiff's opposition memorand[um] raises new allegations that are 'consistent with the allegations' in the Complaint, these allegations may be read as 'supplements to th[e] pleadings.'") (some alteration in original).[3] As required on a motion to dismiss, these facts are accepted as true and construed in the light most favorable to Plaintiff. *Raymond Loubier Irrevocable Tr. v. Loubier*, 858 F.3d 719, 725 (2d Cir. 2017).

---

[2] The Complaint for the purpose of this motion includes the Second Amended Complaint (1:18-cv-3698, ECF Dkt. ("Dkt. No.") 45); Plaintiff's pre-motion letter (Dkt. No. 66); Affidavit if Towaki Komatsu, sworn to May 2, 2019 (Dkt 176); Affidavit of Towaki Komatsu, sworn to May 2, 2019 (Dkt. No. 177); and four letters from Plaintiff to the Court (Dkt. Nos. 124, 195, 210, 221).

[3] The Court's Individual Rules limit the parties to twenty-five pages for memoranda of law in support of and in opposition to dispositive motions. Plaintiff's filings total well over a hundred pages. In addition, Plaintiff has made numerous voluminous and irrelevant filings, many of which exceed a hundred pages in length. *See, e.g.*, Dkt. No. 108. Plaintiff was directed to file only materials to aid in the disposition of the Second Amended Complaint. *See* Dkt. No. 118. Only the additional filings relevant to this motion are considered -- not, for example, docket entries 154, 202 and 211.

### A. The Parties

Plaintiff is a New York resident and Navy veteran. The "Town Hall Defendants" are Inspector Howard Redmond, Officer Rafael Beato, Officer Yu Liu, Lieutenant Ralph Nieves, Detective Raymond Gerola, all with the NYPD; as well as two members of the New York City Mayor's Community Affairs Unit, Pinny Ringel and Harold Miller. The "Resource Fair Defendants" are Defendants Nieves and Gerola; another member of the Community Affairs Unit, Rachel Atcheson; NYPD Detective Andrew Berkowitz and Bronx Court Officers Captain Anthony Manzi, Sergeant Matthew Brunner and Sergeant Ramon Dominguez.[4]

### B. The Town Hall Incident

On April 27, 2017, Plaintiff sought to attend a public "Town Hall" event where New York City Mayor Bill de Blasio was scheduled to speak. The Town Hall was taking place at a public high school in Long Island City, New York. Plaintiff had reserved a spot at the event and arrived early to wait in line. While in line, Plaintiff was given a ticket to enter the building.

The line started moving, but Defendants Miller and Ringel prohibited Plaintiff from entering the building. Plaintiff rejoined the line, and Miller again prohibited his entry. Plaintiff objected to this treatment to unidentified members of the NYPD, but they did not intervene on his behalf.

---

[4] The claims against the Bronx Court Officers -- Defendants Manzi, Brunner and Dominguez -- in their official capacities are dismissed. The Eleventh Amendment bars suit against them under the doctrine of sovereign immunity. *See* U.S. Const. amend. XI; *Gollomp v. Spitzer*, 568 F.3d 355, 365 (2d Cir. 2009). Their employer, the State of New York, has not waived, and Congress has not abrogated, sovereign immunity to allow for § 1983 claims in federal court. *See Estate of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 421-22 (S.D.N.Y. 2017). The claims against them in their individual capacities are not dismissed for lack of jurisdiction.

Defendant Redmond approached Plaintiff while he was waiting outside and made physical contact with Plaintiff's body, which Plaintiff "immediately considered to be offensive." Redmond told Plaintiff that he was prohibited from entering the event because Plaintiff had previously harassed New York City Human Resources Commissioner Steven Banks. Plaintiff had criticized Commissioner Banks at a public event about six weeks prior to the Town Hall. Others who were standing in line to attend the Town Hall were allowed to enter the building. After speaking with Redmond, Plaintiff retrieved from his backpack papers that were critical of New York City officials, and he spoke with other members of the public about being barred from entering the event.

Plaintiff next stood on the sidewalk roughly forty-five feet from the entry to the school. Defendant Beato shoved Plaintiff three times while he stood there. Beato's colleagues, Defendants Liu, Nieves and Gerola, witnessed this and did not intervene. These four Defendants then stood in front of Plaintiff so that he could not see and call out to the Mayor as he left the event.

### C. The Resource Fair Incident

On May 23, 2017, Plaintiff sought to attend a public "Resource Fair" at a courthouse in the Bronx, New York, where Mayor de Blasio and other City officials were scheduled to attend. The purpose of the event was to "[m]eet with top city commissioners and senior staff during scheduled office hours to address your questions and concerns."[5] Plaintiff had reserved a spot at the event. The online registration form asked what questions Plaintiff planned to bring to the resource fair, and his response was "Proof NYC agencies haven't been doing their jobs."

---

[5] The Complaint refers to the webpage for the New York City Resource Fairs. *See* 1:18-cv-3698 ECF Dkt 124 at 2 (reference to the event web page). The quote comes from the web page.

Plaintiff also attended the event to engage in whistleblowing activity and to seek assistance in obtaining employment and legal assistance from New York City government agencies. Plaintiff was permitted to enter the courthouse.

Defendants Atcheson, Manzi and Brunner prohibited Plaintiff from entering the room where the event was taking place and directed him to move away from the entrance. The other Resource Fair Defendants saw or were aware of these actions and did not intervene. At the same time, other members of the public were allowed to enter the event.

Defendants Nieves, Gerola and Berkowitz were present at this time in the courthouse and communicating with one another. While waiting outside the entrance, Nieves observed Plaintiff speak with a reporter about having filed suit against a City agency and his objections to being kept out of the Resource Fair. At around the same time, Dominguez told Plaintiff that there was an intention to keep "undesirable" people out of the event. Defendant Manzi briefly seized Plaintiff's bag in the presence of Brunner and Dominguez, but Plaintiff took the bag from Manzi moments later. Manzi swore at Plaintiff when he retrieved his bag.[6]

## II. STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the

---

[6] The Complaint also describes an incident on December 26, 2017. Plaintiff states that he raises these allegations so that "equitable tolling [will] be applied to my claims in this action." As Defendants do not contend that Plaintiff's claims are time barred, the tolling issue and December 26 incident are not addressed.

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 545). On a Rule 12(b)(6) motion, "all factual allegations in the complaint are accepted as true and all inferences are drawn in the plaintiff's favor." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 59 (2d Cir. 2016) (internal quotation marks omitted).

Courts must "liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions to raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal quotation marks omitted). "We afford a pro se litigant 'special solicitude' by interpreting a complaint filed pro se to raise the strongest claims that it suggests." *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (internal quotation marks omitted).

## III. DISCUSSION

The Complaint asserts claims against the individual Defendants under 42 U.S.C. § 1983. In order to succeed on a claim under § 1983, "a plaintiff must allege that (1) the defendant was a state actor, i.e., acting under color of state law, when he committed the violation and (2) the defendant deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States." *Milan v. Wertheimer*, 808 F.3d 961, 964 (2d Cir. 2015) (citations omitted). A defendant can be liable under § 1983 "only if that individual is personally involved in the alleged deprivation." *Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir. 2015);

*accord Brandon v Kinter*, --- F.3d ---, 2019 WL 4263361, at *10 (2d Cir. Sept. 10, 2019) (internal quotation marks omitted) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."). Only the second element is disputed here, whether Defendants deprived Plaintiff of his constitutional rights under the First, Fourth and Fourteenth Amendments.

### A. The First Amendment Claim (Count One)

#### 1. The Town Hall and the Individual Defendants

The Complaint states a First Amendment claim as to the Town Hall Incident against Defendants Redmond, Beato, Liu, Nieves and Gerola, but not Ringel and Miller. The First Amendment, which "guarantees freedom of speech . . . extends not only to the right to speak, but also to the right to listen and receive information." *Kass v City of New York*, 864 F.3d 200, 207 (2d Cir 2017).

"[T]he level of judicial scrutiny that must be applied to state actions inhibiting speech varies with the nature of the forum in which the speech occurs." *Johnson v. Perry*, 859 F.3d 156, 171 (2d Cir. 2017) (citing *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.*, 426 F.3d 617, 625 (2d Cir. 2005)). "Traditional public forums include areas such as streets and parks which have immemorially been held in trust for the use of the public . . . [T]he state may not enact content-based restrictions [in traditional public forums] unless they are necessary to serve a compelling state interest." *Id*. at 172 (quoting *Peck*, 426 F.3d at 625-26) (internal quotations omitted). "A limited public forum is created when the State opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain topics." *Id*. (quoting *Peck*, 426 F.3d at 626) (internal quotations omitted). For a limited public forum, "regulations governing the content of speech are allowed, so long as they are reasonable and

viewpoint-neutral." *Id.* (quoting *Peck*, 426 F.3d at 626). These content regulations are "permissible if [they] preserve[] the purposes of that limited forum." *Bronx Household of Faith v. Board of Educ. of City of New York*, 650 F.3d 30, 36 (2d Cir. 2011) (citing *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830 (1995)). A reasonable restriction may prohibit disruptive behavior, as the Government has "a significant interest in conducting its meeting[s] in an orderly and effective fashion." *Madden v. Town of Hempstead*, No. 16 Civ. 6835, 2019 WL 1439935, at *15 (E.D.N.Y. Mar. 29, 2019).

The Government also may not retaliate against a private citizen for engaging in First Amendment activity. *See Kuck v. Danaher*, 600 F.3d 159, 168 (2d Cir. 2010). "'To plead a First Amendment retaliation claim a plaintiff must show [that]: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by plaintiff's exercise of that right; and (3) the defendant's actions caused him some injury.'" *Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (citing *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013)) (internal alteration omitted).

The Complaint pleads a sufficient First Amendment Claim against Defendant Redmond for barring Plaintiff from the Town Hall. The Town Hall was a limited public forum. The Government opened this forum to public expression for the limited purpose of allowing attendees to hear the Mayor speak and, potentially, ask the Mayor questions. *See, e.g.*, *Santucci v. Levine*, No. 17 Civ. 10204, 2019 WL 3742286, at *10 (S.D.N.Y. Aug. 8, 2019) (citing *Malta v. Slagle*, No. 5 Civ. 342S, 2007 WL 952045, at *3 (W.D.N.Y. Mar. 29, 2007); *see also Smith v. City of Middletown*, No. 3:09 Civ. 1431, 2011 WL 3859738, at *4 (D. Conn. Sept. 1, 2011) ("Numerous courts have held that city council meetings which have been opened to the public are limited public fora."). Accordingly, regulations on speech at the Town Hall had to be

reasonable and viewpoint-neutral, and content-restrictions were permitted to the extent that they "preserve[d] the purposes of that limited forum." *See Bronx Household of Faith*, 650 F.3d at 36. The Complaint alleges that Defendant Redmond barred Plaintiff from the Town Hall because he had criticized Commissioner Banks' policies. This restriction was not view-point neutral and was unreasonable and retaliatory, and therefore pleads a sufficient First Amendment Claim.

The Complaint also pleads a First Amendment claim against Defendants Beato, Liu, Nieves and Gerola, plausibly alleging that they blocked Plaintiff's line of sight because they witnessed Plaintiff retrieve from his backpack material critical of City officials and did not want him communicating his criticisms to the Mayor. The sidewalk where Plaintiff was standing was a traditional public forum where content-based restrictions on speech are impermissible unless they are necessary to serve a compelling state interest. *See Johnson v. Perry*, 859 F.3d at 171-72. Liberally construing the Complaint, this restriction did not serve a compelling state interest, was not viewpoint-neutral and is retaliatory.

Drawing all inferences in Plaintiff's favor, the Complaint alleges no facts to suggest that Plaintiff intended to be disruptive at the event or was disruptive prior to the event. The restrictions placed on Plaintiff at the Town Hall therefore were unreasonable and did not serve a compelling state interest. With the benefit of discovery, a basis for some restrictions on Plaintiff's access may be shown, but at this stage of the litigation, the First Amendment claim as to the Town Hall against Defendants Redmond, Defendants Beato, Liu, Nieves and Gerola is sufficient.

### 2. Qualified Immunity and the Town Hall Defendants

Qualified immunity does not bar Plaintiff's claim for money damages against Defendants Redmond, Beato, Liu, Nieves and Gerola regarding their conduct at the Town Hall event.

9

Qualified immunity should be resolved "'at the earliest possible stage in litigation.'" *Lynch v. Ackley*, 811 F.3d 569, 576 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231-32 (2009)). When a defendant presents an immunity defense on a motion to dismiss instead of a motion for summary judgment, a "more stringent standard" applies. *Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018) (citing *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004)). At this stage of the litigation, the court accepts "the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiffs' favor, including both those that support the claim and those that defeat the immunity defense." *Id*. (internal quotation marks omitted).

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Brown v. City of New York*, 862 F.3d 182, 190 (2d Cir. 2017). "A defendant is entitled to qualified immunity if (1) [the defendant's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or (2) it was objectively reasonable for [the defendant] to believe that his actions were lawful at the time of the challenged act." *Kinter*, 2019 WL 4263361, at *12 (internal quotation marks omitted). "To determine whether the relevant law was clearly established, [courts] consider the specificity with which a right is defined, the existence of Supreme Court or Court of Appeals case law on the subject, and the understanding of a reasonable officer in light of preexisting law." *Terebesi v. Torreso,* 764 F.3d 217, 231 (2d Cir. 2014).

Plaintiff has a clearly established right not to be barred from a limited public forum because he previously exercised his First Amendment rights by criticizing a public official. *See New York Times Co. v. Sullivan*, 376 U.S.254, at 269 (1964) ("The maintenance of the opportunity for free political discussion to the end that government may be responsive to the will

of the people and that changes may be obtained by lawful means, an opportunity essential to the security of the Republic, is a fundamental principle of our constitutional system. It is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions.") (internal quotations omitted). He also has a clearly established right not to be barred from communicating with a public official because he had intended to communicate negative views. *See id*. These rights are widely known, deeply held and enshrined in the United States Constitution's First Amendment. *See* U.S. Const. amend. I ("Congress shall make no law . . . abridging the freedom of speech").

The Town Hall Defendants make no argument that a reasonable officer would have believed it was constitutional to bar Plaintiff on account of his past speech from the Town Hall or from seeing the Mayor in order to speak to him. Accordingly, qualified immunity is not a defense to Plaintiff's First Amendment claim for money damages against Defendants Redmond, Beato, Liu, Nieves and Gerola for their conduct at the Town Hall event.

### 3. The Resource Fair and the Individual Defendants

The Complaint does not state a First Amendment claim against the Resource Fair Defendants as to the Resource Fair. The Resource Fair also was a limited public forum. The Government hosted the Resource Fair for the limited purpose of allowing New York residents to "[m]eet with top city commissioners and senior staff during scheduled office hours to address . . . questions and concerns." 1:18-cv-3698, ECF Dkt. No. 124 at 2; *see Santucci*, 2019 WL 3742286, at *10 (public official meetings are generally considered limited public forums). Plaintiff informed the City officials that he intended to attend the event to "[p]ro[ve that] NYC agencies haven't been doing their jobs." The Complaint plausibly alleges that Plaintiff was barred from the forum for this reason. Plaintiff's stated intention was accordingly consistent

11

with the purpose of providing this forum. *See Bronx Household of Faith*, 650 F.3d at 36. Barring his attendance on this basis was therefore unreasonable and not content-neutral, and contrary to the First Amendment.

However, the Complaint does not plausibly allege that the Resource Fair Defendants were personally aware of Plaintiff's purpose in attending the event, nor that they barred his entry for that reason. The Complaint at most suggests that they were communicating with each other and -- at someone's direction -- barred Plaintiff from the event because he was "undesirable." Accordingly, even though the Complaint adequately alleges a constitutional violation as to the Resource Fair, it fails to allege that any Resource Fair Defendant is personally liable for the violation. *See Kinter*, 2019 WL 4263361, at *10. The First Amendment claim against the Resource Fair Defendants as to the Resource Fair is dismissed.

### B. The Selective Enforcement Claim (Count One)

Plaintiff asserts that he was discriminated against based on his viewpoint in violation of the Fourteenth Amendment. A plaintiff who does not assert being a member of a protected class may bring a selective enforcement Equal Protection claim. *Smolen v. Wesley*, 16 No. Civ. 2417, 2019 WL 4727311, at *15 (S.D.N.Y. Sept. 25, 2019). A selective enforcement claim requires that Plaintiff received selective treatment when compared to others similarly situated, and that the selective treatment was motivated by an intention to discriminate because of impermissible considerations, such as the exercise of a constitutional right. *See Berg v. Kelly*, 897 F.3d 99, 113 (2d Cir. 2018).

The factual allegations and analysis here are the same as for Plaintiff's First Amendment claims. Liberally construed, the Complaint also alleges that Plaintiff was similarly situated to others standing in line. A claim is sufficiently stated as to the Town Hall against Defendants

Redmond, Beato, Liu, Nieves and Gerola, as Plaintiff was targeted on the basis of his decision to exercise his constitutional right to free speech. For the same reasons discussed above, qualified immunity does not bar a request for money damages. Also as discussed above, a claim is not stated as to the Resource Fair Defendants because the Complaint does not allege facts to show that they knowingly excluded him from the event because of constitutionally protected activity.[7]

### C. The Municipal Liability Claim (Count Two)[8]

"To bring a [§] 1983 lawsuit for municipal liability, a plaintiff must prove that action pursuant to official municipal policy caused the alleged constitutional injury." *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019); *see also Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694-95 (1978). A municipality may be held liable "if the plaintiff's injury was caused by 'action pursuant to official municipal policy.' 'Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.'" *Hernandez v. United States*, --- F.3d ---, 2019 WL 4419379, at *9 (2d Cir Sept. 17, 2019) (internal citations omitted) (quoting *Connick v.*

---

[7] The Complaint suggests that the Fourteenth Amendment claim is based on the decision in *Knight First Amendment Inst. at Columbia Univ., et al. v. Trump*, 302 F. Supp. 3d 541 (S.D.N.Y. 2018), *aff'd*, 928 F.3d 226 (2d Cir. 2019). The issue there was whether, under the First Amendment (not the Fourteenth Amendment), a citizen could be barred from an online forum based on the content of his or her speech. The decision in *Knight* is consistent with the Court's holding regarding the First Amendment claim, *supra*, but is not relevant to Plaintiff's Fourteenth Amendment claim.

[8] The Complaint suggests that the City violated New York State's Open Meetings Law when Plaintiff was barred from entering the Town Hall or Resource Fair. Section 103 of the Open Meetings Law provides that the law pertains to a "meeting" of a "public body." N.Y. Pub. Off. Law § 103(a) (McKinney). Neither event here qualifies as a "meeting" or "public body" as defined by the statute. *See id*. §§ 102(1) ("'Meeting' means the official convening of a public body for the purpose of conducting public business"); 102(2) ("'Public body' means any entity, for which a quorum is required in order to conduct public business . . . performing a governmental function"). The Complaint does not plead a sufficient claim under the Open Meetings Law.

*Thompson*, 563 U.S. 51, 60-61 (2011)). "Although 'official policy' often refers to formal rules or customs that intentionally establish 'fixed plans of action' over a period of time, when a municipality 'chooses a course of action tailored to a particular situation,' this may also 'represent[ ] an act of official government 'policy' as that term is commonly understood.'" *Montero v. City of Yonkers, New York*, 890 F.3d 386, 403 (2d Cir. 2018) (considering a narrow policy and practice of retaliation against the plaintiff but affirming dismissal where the complaint did not allege that the retaliatory acts had been initiated by a policymaking official). "'[E]ven a single action by a decisionmaker who 'possesses final authority to establish municipal policy with respect to the action ordered' may deprive the plaintiff of his or her constitutional rights." *Id*. (quoting *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004)).

The Complaint adequately pleads a municipal liability claim for the persistent practice and policy of excluding Plaintiff from public events where the Mayor attends. In addition to the Town Hall and Resource Fair, the Complaint alleges that Plaintiff was barred by police officers or other City officials from attending at least ten additional events where Mayor de Blasio was speaking. The Complaint plausibly suggests that these actions were taken at the behest of a policymaking official, based on the consistent actions of many different City officials and police officers at various events, and the allegation that one of the defendants said that Plaintiff had to wait for a decision about whether he and another person would be permitted to enter the Town Hall event. At this stage in the litigation, and construing the pleadings in Plaintiff's favor, the Complaint alleges a persistent practice and policy to prohibit Plaintiff from such events due to his intention to speak out critically.

The Complaint, liberally construed, also requests permanent injunctive relief against the City so that Plaintiff can access public events. *See Hardaway*, 879 F.3d at 489 ("We afford a pro se litigant 'special solicitude' by interpreting a complaint filed pro se to raise the strongest claims that it suggests." (quotation marks omitted)). This request for relief ultimately would be granted only if Plaintiff succeeds on the merits of the constitutional claims after the facts are more fully developed in discovery, and if the four factors required for permanent injunctions are satisfied:

> [A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*U.S.S.E.C. v Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 296 (2d Cir. 2014) (quoting *eBay Inc. v MercExchange, L.L.C.*, 547 US 388, 391 (2006)).

The request for permanent injunction relief is not dismissed because the Complaint alleges sufficient facts that if proven would satisfy the four *eBay* factors. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *New York Progress and Protection PAC v Walsh*, 733 F.3d 483, 486 (2d Cir. 2013) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); *see Knight First Amendment Inst. at Columbia Univ. v Trump*, 302 F Supp. 3d 541, 577 (S.D.N.Y. 2018), *aff'd*, 928 F.3d 226 (2d Cir. 2019). The balance of hardships tilts in Plaintiff's favor; the opportunity to voice objections to political officials is "a fundamental principle of our constitutional system," *New York Times Co.*, 376 U.S. at 269, whereas Defendants need only provide Plaintiff access as long as he complies with reasonable conditions. Monetary damages cannot adequately compensate Plaintiff for these injuries because of this fundamental interest. *Id*. Finally, "securing First Amendment rights is in

the public interest." *Walsh*, 733 F.3d at 488; *see also Amarin Pharma, Inc. v. U.S. Food & Drug Admin.*, 119 F. Supp. 3d 196, 237 (S.D.N.Y. 2015). A narrowly tailored injunction that allows Plaintiff access to public events so long as he does not act in a disruptive manner would be in the public interest and respect both Plaintiff's First Amendment rights and the City's right to conduct civic meetings in an orderly fashion.

Liberally construed, and construing all facts in Plaintiff's favor, the Complaint states a constitutional claim against the City, which still must be proved. In the event that Plaintiff sustains his burden of proof, an appropriately tailored injunction that lifts the bar on Plaintiff's attending City events may be appropriate.

### D. The Fourth Amendment Claim (Count Three)

The Fourth Amendment protects against unreasonable searches and seizures by the Government. U.S. Const. amend. IV. The "seizure of property occurs when there is some meaningful interference with an individual's possessory interest in that property." *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) (citing *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). The Complaint incorporates by reference security footage of the Bronx courthouse on the day of the Resource Fair Incident.[9] *See Garcia v. Does*, 779 F.3d 84, 87-88 (2d Cir. 2015) (allowing consideration of videos incorporated by reference into the complaint on a motion to dismiss where the parties did not object, but without reaching the issue). The footage shows that Defendant Captain Manzi took possession of Plaintiff's bag for less than five seconds and that

---

[9] *See e.g.*, Dkt. No. 45 ¶ 6(d) ("Mr. Manzi is shown at 9:47 am on 5/23/17 in video footage that was recorded by the security camera controlled by the New York State Office of Court Administration that was recording from a location near Room 105 in the Bronx Supreme Court, as Mr. Manzi used his left hand to make a hand gesture to illegally direct me away from the entrance. . . . Additionally, at 9:49 am on 5/23/17, the same security camera I just discussed recorded Mr. Manzi using his right hand to illegally seize a bag of mine"); Dkt No. 66 at 19-25 (where Plaintiff took still images of the video footage and described their events).

Plaintiff immediately retrieved the bag thereafter.  This is not meaningful interference with Plaintiff's possession, and therefore Plaintiff does not state a claim for interference with a property interest.

## IV. CONCLUSION

For the foregoing reasons, the State Defendants' motion to dismiss is GRANTED.  The City Defendants' motion to dismiss is GRANTED in part and DENIED in part as follows: Defendants Ringel and Miller are dismissed.  The claims that Plaintiff's First and Fourteenth Amendment rights were violated at the Town Hall survive against Defendants Redmond, Beato, Liu, Nieves and Gerola.  The *Monell* claim survives against the City.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 80, 85, and to mail a copy of this Opinion and Order to pro se Plaintiff.

Dated: September 30, 2019
       New York, New York

                                              LORNA G. SCHOFIELD
                                        UNITED STATES DISTRICT JUDGE